ARCHIE A. SCOTT, APPELLANT, V. CHARLES H. ROH-
MAN ET AL., APPELLEES.

FILED FEBRUARY 5, 1895. No. 7178.

1. **Docket Entry of Judgment in County Court.** It is not essential to the validity of a judgment rendered by a county court that it be entered upon the docket in the judge's own handwriting, or that it be attested by his signature. If the judgment actually rendered is spread upon the county court records under the direction and supervision of the judge it is sufficient.

2. **Garnishment: JUDGMENT.** A judgment debtor is liable to the process of garnishment, when the two actions are brought in the same court, but not otherwise.

3. ——: ——. A judgment of the district court of this state cannot be reached by garnishment proceedings before the county court.

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

See opinion for statement of the case.

*A. G. Greenlee*, for appellant:

A judgment debtor can be held as garnishee. (*Skipper v. Foster*, 29 Ala., 330; *Osborn v. Cloud*, 23 Ia., 104; *Gamble v. Central Railroad & Banking Co.*, 80 Ga., 595; *McBride v. Fallon*, 65 Cal., 301; *Wehle v. Conner*, 83 N. Y., 231; *Oppenheimer v. Marr*, 31 Neb., 811.)

All reasons for a rule that the garnishment of a judgment in a different court cannot be permitted, as laid down in some of the older authorities, vanish when applied to this case or to any similar case under our procedure, and the policy of the law which demands that all the property of a debtor not exempt shall be applied to the payment of his debts should be permitted to decide this case. (*Luton v. Hoehn*, 72 Ill., 81; Drake, Attachment & Garnishment, sec. 623; *Wood v. Lake*, 13 Wis., 94; Waples, Attachment,· 597.)

Not only are all the reasons in favor of the validity of this garnishment, but the weight of authority, and especially of the more recent authority, is upon the side of the appellant. (*Jones v. New York & Erie R. Co.,* 1 Grant [Pa.], 457; *Fithian v. New York & Erie R. Co.,* 31 Pa. St., 114; *Spicer v. Spicer,* 23 Vt., 678; *Luton v. Hoehn,* 72 Ill., 81; *Allen v. Watt,* 79 Ill., 284; *Blake v. Adams,* 64 N. H., 86; *Trombly v. Clark,* 13 Vt., 118.)

The signature of the judge is not necessary to the validity of a judgment. (Black, Judgments, sec. 109; *Fontaine v. Hudson,* 93 Mo., 62; *Crim v. Kessing,* 26 Pac. Rep. [Cal.], 1074; *Platte County v. Marshall,* 10 Mo., 345; *California S. R. Co. v. Southern P. R. Co.,* 7 Pac. Rep. [Cal.], 123; *French v. Pease,* 10 Kan., 51; *Rollins v. Henry,* 78 N. Car., 342; *Keener v. Goodson,* 89 N. Car., 273; *Osburn v. State,* 7 O., 212; *Childs v. McChesney,* 20 Ia., 431; *Lockhart v. State,* 22 S. W. Rep. [Tex.], 413; *Sullivan Savings Institution v. Clark,* 12 Neb., 579.)

The garnishment cannot be cut off by a subsequent assignment of the judgment. (*Downer v. South Royalton Bank,* 39 Vt., 25; *De La Vergne v. Evertson,* 1 Paige Ch. [N. Y.], 181; *Thompson v. Jones,* 53 Hun [N. Y.], 268; *Cox v. Palmer,* 60 Miss., 793; *Wright v. Levy,* 12 Cal., 257; *Mitchell v. Hockett,* 25 Cal., 538; *Clarke v. Hogeman,* 13 W. Va., 718; *Ives v. Addison,* 39 Kan., 172.)

*Webster, Rose & Fisherdick, Daniel F. Osgood, Abbott & Abbott,* and *Thomas Ryan, contra.*

NORVAL, C. J.

This suit was instituted in the district court of Lancaster county by the appellant to determine the rights of the respective parties to certain moneys which had been paid by John Fitzgerald to the clerk of said court in satisfaction of a judgment which had theretofore been rendered therein in a cause wherein one John Lanham was plaintiff, and said

Fitzgerald was defendant. Issues were formed, and upon the trial, the court made the following findings of fact:

"1. That in an action then pending in this court, between John Lanham as plaintiff, and John Fitzgerald as defendant, for recovery of money alleged to be due the plaintiff Lanham from defendant Fitzgerald, on a contract in writing, the jury on the 25th day of February, 1893, returned a verdict in favor of Lanham, and assessing the amount of his recovery at the sum of $1,108.18. To which finding the defendants except.

"2. That Fitzgerald filed a motion for a new trial, which was on the 1st day of April, 1893, overruled, and on that day the court entered judgment on said verdict in favor of Lanham for amount therein stated.

"3. That on the 1st day of April, 1893, Webster, Rose & Fisherdick, defendants, filed in this court, notice of claim of lien on said judgment for $390, their fee as attorneys for Lanham in said suit.

"4. That on the 17th day of April, 1893, Abbott & Abbott, defendants, filed in this court their notice of claim of lien on said judgment for $250 their fees as attorneys for Lanham in said court.

"5. That on the 10th day of April, 1893, the defendant C. H. Rohman filed in this court an assignment of said judgment by Lanham to him, by its terms, however, subject to the liens of the above named attorneys in findings three and four.

"6. That on the 25th day of February, 1893, in the cases of Archie A. Scott v. John Lanham, and Perry S. Chapman v. John Lanham, in the county court of Lancaster county, wherein judgments had theretofore been had, and executions returned unsatisfied, affidavits in garnishment were therein filed, on which issued summonses against John Fitzgerald, garnishee, and same were served on him on the 27th day of February, 1893.

"7. That Fitzgerald, on March 14, 1893, made answer

in said cases as garnishee, setting up the said verdict in Lanham's favor against him; that no judgment had yet been rendered thereon; that if judgment thereon should be entered and not reversed or otherwise vacated, he would be indebted in some amount to Lanham, and asked that a hearing on his answer be continued until it is determined whether or not he, as garnishee, is indebted to Lanham; whereupon the county judge entered an order continuing the further answer of the garnishee until April 15, 1893.

"8. That on the 15th day of April, 1893, Fitzgerald made further answer in said causes in the county court, setting up that judgment in said district court had been rendered in favor of Lanham for $1,018.18 against him, that it was unpaid, still owed by him, and that it had been stayed for nine months from April 1, 1893; that subsequent to the service of notice of garnishment upon him, the said judgment had been assigned to said Rohman subject to said liens of Webster, Rose & Fisherdick and Abbott & Abbott, and that when said notice was so served, and at the time of his former answer, he had no notice of any attorney's lien on said judgment.

"9. That on the 25th day of April, 1893, orders issued on said answers of Fitzgerald from the county court, commanding him to pay into said court on January 1, 1894, to be applied on the judgment of Scott against Lanham, the sum of $314.30, with seven per cent interest thereon from the 6th day of December, 1890, and also $16.65 costs of suit; and commanding him to pay into said county court at the same time, to be applied on judgment of Chapman against Lanham, $86.50, with seven per cent interest from the 17th day of January, 1891, and $16 costs of suit.

"10. That plaintiff Scott is the owner and holder of the Chapman judgment.

"11. That on the 16th day of December, 1893, Fitzgerald paid into this court the sum of $1,060.10, being

said judgment, $1,018.18, with seven per cent interest thereon from April 1, 1893, where the same now remains in the hands of the clerk.

"12. That the assignment by Lanham to Rohman was for a valuable consideration. Plaintiff excepts to said twelfth finding of fact.

"13. The court further finds that there appears in docket 18, page 60, of the county judge's docket of Lancaster county, state of Nebraska, an entry bearing date November 5, 1890, in a case entitled 'Archie A. Scott v. John Lanham;' that the court finds that there is due the plaintiff, from the defendant, the sum of $314.30, and it is therefore considered and adjudged that the plaintiff recover from the defendant the sum of $314.30, and the costs of this action, taxed at $6.45; and the court finds that said entry is not in the handwriting of the then county judge, nor is it signed by the then county judge, or by any county judge, but the court finds it is in the handwriting of C. Y. Long, who was employed in the county judge's office for the purpose of writing up its records. The court further finds that the minutes of the court in the term calendar upon which said judgment purports to have been rendered, was in the handwriting of the then county judge. To the thirteenth finding of fact the plaintiff duly excepts."

The court found as conclusions of law:

"1. That there is no valid judgment in the county court in the case of Archie A. Scott v. John Lanham on which to base proceedings in garnishment. Plaintiff excepts to said first conclusion of law.

"2. That the judgment in the case of P. S. Chapman v. John Lanham in said county court is valid.

"3. That the proceedings in garnishment in the county court of Lancaster county, wherein the garnishee is a judgment debtor in an action in the district court of Lancaster county, and the order of the county court on said judgment debtor to pay into said county court a portion of the

debt due from said garnishee on said judgment in the district court, are wholly void and against law. Plaintiff excepts to said third conclusion of law.

"4. That of said $1,069.10 defendants Webster, Rose & Fisherdick are entitled to $390, to be first paid therefrom; that defendants Abbot & Abbot are entitled to be paid next from said fund the sum of $250, and the balance of $429.10 belongs to the defendant Chas. H. Rohman, as assignee of John Lanham, and the clerk is ordered to pay the same to him; that upon payment of said sums the said defendants shall release and the clerk of this court shall satisfy and discharge of record the said judgment in favor of John Lanham against John Fitzgerald. To so much of said fourth conclusion of law as gives said judgment fund to said defendants the plaintiff duly excepts.

"5. That plaintiff pay the costs of this action. Plaintiff excepts."

A decree was entered ordering the clerk of the district court to pay out of the funds in his hands, first, to the defendants Webster, Rose & Fisherdick, the sum of $390; second, to the defendants Abbot & Abbot, the sum of $250, and the balance of said funds, amounting to the sum of $429, to the defendant Chas. H. Rohman, as assignee of the defendant John Lanham; and upon the payment of the said several sums that said Webster, Rose & Fisherdick, Abbott & Abbott, and Chas. H. Rohman were ordered to release their respective liens upon the said judgment in favor of Lanham and against Fitzgerald, and the clerk of the district court was ordered to satisfy and release of record said judgment. The plaintiff appeals.

It is stipulated by the parties that the facts in the case are as found by the trial court, with the following exceptions:

"1. The assignment mentioned in the fifth finding was made for the purpose of indemnifying said Rohman against loss upon a contractor's bond, which he had theretofore,

to-wit, on the —— day of February, 1891, signed for the said Lanham, as contractor; that at the time said assignment of judgment was made said Rohman did not incur any additional liability, and did not surrender any security or indemnity of any kind whatsoever theretofore held by him. There were, however, claims of various parties made against the said Rohman, seeking to hold him liable upon said bond, and certain of said claims are now in suit in the district court of Lancaster county, pending there upon appeal from the county court of said county, judgment having been rendered against him in the court below.

"2. The judgment in favor of said Lanham and against Fitzgerald, mentioned in these findings, was paid in for Fitzgerald by Charles McGlave, a clerk in the office of the said Fitzgerald, without the knowledge of Fitzgerald. The said McGlave, at the time he paid said debt, did not know that said judgment had been garnished. The said McGlave, however, had authority by virtue of his employment to pay said money into court, and did so for the purpose of satisfying the said judgment and relieving the real estate of said Fitzgerald from the lien thereby created, in order that the said Fitzgerald might procure a loan which the said Fitzgerald was at that time negotiating.

"3. That defendant Lanham is insolvent."

It is urged that the judgment in the case of Archie A. Scott v. John Lanham is invalid, because the entry thereof in the county judge's docket is not in the handwriting of the then county judge of Lancaster county, and is not attested by his signature. The question raised by the record, so far as we are advised, is now for the first time presented to this court for decision, and we have given the subject such consideration as the time at our disposal will permit. Section 34, chapter 20, Compiled Statutes, provides: "Every record made in any probate court, excepting original orders, judgments, and decrees thereof, shall have attached thereto a certificate signed by the judge of such court, showing the

date of such record and the county in which the same is made, and it shall not be necessary to call such judge or his successor in office to prove such record so certified. And in any cause, matter, or proceeding in which the probate court or probate judge has jurisdiction, and is required to make a record not provided for in this chapter, such record shall be certified in the same way and with like effect as afore-said." It certainly cannot be maintained, with any degree of success, that the quoted provision requires the county judge to sign judgments in his docket to make them valid. On the contrary, original orders, judgments, and decrees in said court are expressly excepted from the provisions of the statute quoted requiring that the signature or certificate of the county judge should be appended as a verification of every record made by him. Section 31 of said chapter 20 declares: "The probate judge shall keep a docket in which all his proceedings in civil actions shall be entered in like manner, as near as may be, as the proceedings before jus-tices of the peace in civil actions; and the provisions of this code relating to justices' docket shall, as near as may be, apply to the docket of the probate judge." Section 1086 of the Code of Civil Procedure requires every justice to keep a docket, and directs what matters shall be entered therein, but it contains no provision, nor have we been able to find any statute, and none has been cited by counsel, which in express terms makes it necessary for either a county judge, or a justice of the peace, to sign judgments entered in his docket. The absence of the signature of the county judge to a judgment, or the record in which the same is entered, is not fatal. (*Daniels v. Thompson*, 48 Ill. App., 393; *Lythgoe v. Lythgoe*, 26 N. Y. Sup., 1063.)

Our attention has been called to section 447 of the Code of Civil Procedure, which reads as follows: "When the judicial acts or other proceedings of any court have not been regularly brought up and recorded by the clerk thereof, such court shall cause the same to be made up and

44

recorded within such time as it may direct. When they
are made up and upon examination found to be correct, the
presiding judge of such court shall subscribe the same."
This statute relates to records of the several district courts
of the state, and contemplates that judgments transcribed
upon the journal of such court shall be signed by the pre-
siding judge. Assuming for the purposes of this case,
without deciding the point, that section 447 is applicable to
the county and justices' courts, it does not follow that the
judgment of Scott v. Lanham is void because it is not at-
tested by the signature of the county judge. The provi-
sion of said section concerning the signing of the record
by the judge is not mandatory, but directory merely, and a
non-compliance with the statute does not invalidate a judg-
ment pronounced by the court and duly entered upon the
journal. Similar statutes have generally been held to be
directory only, and that the omission of the judge's signa-
ture does not vitiate the judgment. (Freeman, Judgments,
sec. 50e; Black, Judgments, sec. 109; *Vanfleet v. Phillips*,
11 Ia., 560; *Childs v. McChesney*, 20 Ia., 434; *Traer
Brothers v. Whitman*, 56 Ia., 445; *Osburn v. State*, 7 O.,
212; *Platte County v. Marshall*, 10 Mo., 346; *Rollins v.
Henry*, 78 N. Car., 342; *Keener v. Goodson*, 89 N. Car.,
273; *Fontaine v. Hudson*, 5 S. W. Rep. [Mo.], 692;
*Lockhart v. State*, 22 S. W. Rep. [Tex.], 413; *French v.
Pease*, 10 Kan., 51.) In *Foutz v. Mann*, 15 Neb., 172, it
was held that the failure of the judge to sign a decree of
foreclosure does not render it illegal or void. The enter-
ing of the judgment on the docket of the county court was
not in the handwriting of the county judge, but of one
Long, who was employed in the county judge's office for
the purpose of writing up the records of the court. This
fact does not render the judgment void. We have been
unable to find any legislative enactment which requires
that the records of the county court shall be in the hand-
writing of the judge of the court. If they are made up

by some other person, under the direction and supervision
of the judge, it will be sufficient.   The judgment in ques-
tion appears on the docket of the county court.   It was
entered there in accordance with the minutes made by the
county judge in his own handwriting in the term calendar.
The presumption is that the judgment entered by Long
was directed and authorized by the judge.   This presump-
tion is strengthened by the fact that subsequent to the tran-
scribing of the judgment execution had been granted by
the judge and summons in garnishment issued.   In fact it
is not contended that the judgment entered upon the docket
was not the one actually pronounced by the court.   It fol-
lows from the foregoing considerations that the objections
made by the appellees to the judgment in favor of Scott
against Lanham cannot be sustained, and that the district
court erred in its first conclusion of law, in holding said
judgment invalid.

We will next consider whether the proceedings in gar-
nishment against Fitzgerald are valid and binding.   The
record discloses that the indebtedness of Fitzgerald to Lan-
ham had been reduced to judgment.   The first question
therefore presented is whether a judgment debtor can be
garnished.   Section 212 of the Code provides:  " An order
of attachment binds the property attached from the time
of service, and the garnishee shall be liable to the plaintiff
in attachment for all property, moneys, and credits in his
hands, or due from him to the defendant, from the time he
is served with the written notice mentioned in section two
hundred and seven."   By section 221 of the Code the gar-
nishee is required to " appear and answer under oath all
the questions put to him touching the property of every
description and credits of the defendants in his possession
or under his control, and he shall disclose truly the amount
owing by him to the defendant whether due or not, and
in case of a corporation, any stock therein held by or for
the benefit of the defendant, at or after the service of no-

tice." Section 224 reads as follows: "If the garnishee appear and answer, and it is discovered on his examination that at or after the service of the order of attachment and notice upon him he was possessed of any property of the defendant, or was indebted to him, the court may order the delivery of such property and the payment of the amount owing by the garnishee into the court; or the court may permit the garnishee to retain the property or the amount owing, upon the execution of an undertaking to the plaintiff by one or more sufficient sureties, to the effect that the amount shall be paid, or the property forthcoming, as the court may direct." It is very evident that the foregoing provisions are sufficiently broad to cover debts reduced to judgment, and that a judgment debtor is liable to the process of garnishment in a suit against the judgment creditor. The statute is susceptible of no other reasonable construction. It does not exempt any credit of any kind whatever. The decided weight of the decisions in this country lays down the broad doctrine that a judgment debtor may be garnished, and we so hold the law to be in this state. (*Osborne v. Cloud*, 23 Ia., 105; *Gamble v. Central R. & B. Co.*, 80 Ga., 595; *Wood v. Lake*, 13 Wis., 94; *Keith v. Harris*, 9 Kan., 387; *Skipper v. Foster*, 29 Ala., 330; 8 Am. & Eng. Ency. Law, 1169; Drake, Attachment [7th ed.], sec. 622.)

The question presented by the record to be determined is whether a judgment debtor in the district court of this state is liable to garnishment proceedings issued out of the county court. There is an irreconcilable conflict in the authorities bearing upon the subject. Some decisions are to be found in the books which assert that a judgment debtor in one court may be garnished on process issued out of another court. (*Luton v. Hoehn*, 72 Ill., 81; *Allen v. Watt*, 79 Ill., 284; *Jones v. New York & E. R. Co.*, 1 Grant's Cases [Pa.], 457; *Gager v. Watson*, 11 Conn., 168.) The majority of the cases, and the more recent decisions, sus-

tain the doctrine that a debt reduced to a judgment is liable to garnishment when the process of garnishment issues from the same court, but not otherwise. (Drake, Attachment, sec. 625; Waples, Attachment & Garnishment [1st ed.], 596; *Wallace v. McConnell*, 13 Pet. [U. S.], 136; *Thomas v. Wooldridge*, 2 Wood [U. S.], 667; *Henry v. Gold Park Mining Co.*, 5 McCreary [U. S.], 70; *Franklin v. Ward*, 3 Mason [U. S.], 136; *American Bank v. Snow*, 9 R. I., 11; *Burrill v. Letson*, 2 Spears [N. Car.], 318; *American Bank v. Rollins*, 99 Mass., 313; *Perkins v. Guy*, 2 Mont., 16.) In Drake, Attachment, section 625, it is said : "However strongly these reasons apply to the case of a garnishment of the judgment debtor in the same court in which the judgment was rendered, their force is lost when the judgment is in one court and the garnishment in another. There a new question springs up, growing out of the conflict of jurisdiction which at once takes place. Upon what ground can one court assume to nullify in this indirect manner the judgments of another? Clearly, the attempt would be absurd, especially where the two courts were of different jurisdictions or existed under different governments. Take, for example, the case of a court of law attempting to arrest the execution of a decree of a court of equity for the payment of money, by garnishing the defendant; or that of a state court so interfering with a judgment of a federal court, or *vice versa;* it is not to be supposed that, in either case, the court rendering the judgment or decree would or should tolerate so violent an encroachment on its prerogatives and jurisdiction." Waples, in his valuable work on Attachment & Garnishment [1st ed.], 596, says: "It has long been a mooted question whether a judgment debtor can be garnished. It may be considered under two aspects: First, in relation to the judgment debtor; and, secondly, in relation to the court rendering the judgment. So far as the former is concerned, there is no reason why he should not be garnished and the

judgment debt attached in his hands in the suit against the judgment creditor. He has no cause of complaint when he gets acquittance by paying to another under judicial order what he would otherwise be obliged to pay to his immediate creditor. He would have cause to complain should he be made to pay at a time when such payment would give him no acquittance, or under circumstances which would give him no relief from the judgment. If the judgment against him is in a foreign court or in any court other than that in which he is garnished, he should be discharged upon disclosing the existence of the judgment. This leads to the consideration of the question in relation to the court rendering the judgment. The court, being possessed of jurisdiction, has the exclusive right of effectuating its decree by execution. No other equal tribunal can step before it and say that the judgment debtor must pay to some other person other than the judgment creditor, without interfering with the jurisdictional power to execute the judgment rendered. If, however, the attachment suit is brought in the same court that rendered the judgment, there would be no clash of jurisdiction should the attaching creditor be subrogated to the right of the judgment creditor in a suit against the latter. * * * There has been some apparent conflict of opinion upon the question of liability, but nearly all, if not quite all, can be reconciled on the common ground that a judgment debt may be attached and the judgment debtor garnished in an attachment suit pending against the judgment creditor when it can be done without clash of jurisdiction and without subjecting or endangering the garnishee to double payment; and that such debt cannot be attached when such conflict or injustice would result." In Michigan it has been held that a judgment recovered before one justice of the peace is not subject to proceedings in garnishment before another justice. (*Sievers v. Woodburn Sarven Wheel Co.*, 43 Mich., 275; *Noyes v. Foster*, 48 Mich., 273; *Custer v. White*, 49 Mich., 262.) It

Scott v. Rohman.

has likewise been decided that a judgment obtained in the circuit court of a state cannot be garnished before a justice of the peace. (*Clodfelter v. Cox*, 33 Tenn., 330.) To allow a judgment to be garnished in a court other than the one in which it was rendered would subject the debtor to a double judgment on a single liability, and thereby subject him to the danger of being compelled to pay the debt twice. Besides, it would permit one court to interfere with the due execution of process in another tribunal. We are unwilling to place a construction upon the statutes that is liable to lead to such results. Upon principle and authority we are constrained to hold that the garnishment proceedings in the county court, in the case of Scott v. Lanham, were void, and consequently created no lien upon the fund in controversy.

In the brief of appellant it is said: "All opportunity for conflict of jurisdiction, or for injustice has been avoided by the payment of the entire amount of the Lanham judgment into the district court, and the bringing of the equity proceedings in which all parties interested are made defendants, where all the parties can have their rights adjusted. The garnishee can be protected from double payment and his judgment creditor compelled to satisfy the judgment of record." This position might, and doubtless would, be tenable were it not for the fact that Lanham, plaintiff's debtor, assigned his judgment against Fitzgerald to the defendant C. H. Rohman, which assignment was filed in the district court of Lancaster county, according to the fifth finding of fact, on April 10, 1893, several months prior to the institution of this equitable action. Therefore, Lanham had no interest in the judgment or the money paid into court when this action was commenced, and, as we have already shown, the garnishment proceedings created no lien upon the money in dispute. There is no room to doubt that when a judgment has been assigned it is not liable thereafter to garnishment at the suit of the creditor of the assignor.

The conclusion reached makes it unnecessary to consider the rights of Webster, Rose & Fisherdick and Abbott & Abbott to liens for services as attorneys. Plaintiff is not prejudiced by the decision of the trial court upon that branch of the case, and Rohman took an assignment of the judgment from Lanham subject to the liens of the above named attorneys. The decree of the district court is

AFFIRMED.