# CHARLESTON.

## SHREWSBURY v. TUFTS.

Submitted June 14, 1895.—Decided November 20, 1895.

1. CONTRACT BY CORRESPONDENCE—OFFER AND ACCEPTANCE.
   The defendant, T., by letter accompanied by his circular of memoranda for his agents, and his second letter fixing time for his agent S. to commence, left nothing to be implied and nothing to be done but to accept, to which S. replied by accepting T.'s offer unconditionally and without qualification. *Held*, such written offer and written acceptance constituted a written contract.

2. CONTRACT BY CORRESPONDENCE—CONSTRUCTION OF CONTRACT.
   In construing such contract, the court may look to the surrounding circumstances existing when the contract was made, the situation of the parties, the subject-matter of the contract, and the subsequent acts of the parties under the contract.

3 ACCOUNT STATED—ACCOUNT CURRENT.
   As between principal and his agent, a traveling salesman, if a current account be rendered, and the agent receiving it retains it beyond such time as is reasonable, under the circumstances, and according to the usage of the business, for examining and returning it, without communicating any objections, he is considered to acquiesce in its correctness, and he becomes bound by it as an account stated. On the contrary, if, within such reasonable time, he calls on the other party to explain it, or objects to such account, he is not so bound.

4. INSTRUCTIONS.

It is not error to refuse to correct a faulty instruction, or to refuse to give the same instruction twice.

5. GARNISHMENT IN FOREIGN JURISDICTION—CONFLICT OF LAWS.

Plaintiff is a resident of this state. Defendant is a resident of another state. After this suit had been brought, defendant was garnished in the state where he resided, as a debtor of plaintiff, by a creditor of the plaintiff. After judgment had been rendered in this case, defendant moved the court to suspend the execution thereof until the question of plaintiff's liability should be determined in the suit in which defendant had been garnished. It was not error to overrule such motion.

Case in which these principles are discussed and applied.

MILLER & WHITE for plaintiff in error:

*Interpretation of contract.*—Bishop on Contracts, §§ 371, 372 and 382; 2 Parsons on Contracts, b. p. 684; 78 N. Y. 74; 2 Parsons on Contracts (7th Ed.) b. p. 667; 86 N. Y. 472; 35 Ind. 429; Am. & Eng. Enc. of Law, Vol. 1. p. 354; 45 Amer. Dec. 199; 39 Amer. Dec. p. 611; 1 Smith L. C. Amer. Ed. of 1884, p. 418.

*Estoppel and accounts stated.*—40 W. Va. 442; 2 Parsons on Contracts, p. 936-7 and notes cited; 4 Minor's Inst. part 1, p. 710; Story on Agency, § 250 and 255; 16 Hun, (N. Y.) p. 106; 12 Leigh, 173; 34 Amer. Rep. 435; 10 Wal. 129.

*Errors in trial.*—31 W. Va. 862; 97 N. Y. 1; 1 Greenl. on Evidence, § 198 and notes, also § 201 and note; 7 W. Va. 607; 1 Greenl. on Ev. § 197; Bishop on Contracts, §§ 285 and 290; Bispham's Prin. of Eq. § 284; 32 W. Va. 120; 2 Johns, 573 and cit.; 40 W. Va. 442.

*Instructions.*—34 W. Va. 115; Bishop on Contracts, §§ 283 and 412; 26 N. Y. S. 700; 85 Iowa, 728; 4 Mason (U. S.) 297; 33 W. Va. 417.

*Liability of garnishee.*—Code, c. 106, s. 14; 19 W. Va. 115.

*On Motion for New Trial.*—Bishop, Cont. § 382; 2 Pars. Cont. b. p. 684; 78 N. Y. 74; 12 W. Va. 116; 16 W. Va. 308; 28 W. Va 2.

VAN WINKLE & AMBLER and WM. G. PETERKIN for defendant in error:

*Written contract embraced in series of letters.*—31 W. Va. 858, 863; Bish. Cont. [1887] §§ 165, 382.

*Private accounts to be admissible must be from books of original entry.*—21 W. Va. 301, 314; 2 Gratt, 250; 1 Greenl. on Ev. §§ 115, 117, 120; 111 U. S. 216; 18 Wall. 516, 541; 2 Wheat. 111, 116-7; 33 Am. St. Rep. 307.

*It is proper to instruct jury to disregard testimony of witnesses as to matters of which it appears they have no knowledge.*—37 W. Va. 524, 532; 132 U. S. 627.

*Accounts in question were not accounts stated. Rule contended for, by plaintiff in error, applies in Virginia and West Virginia only to accounts between merchant and merchant.*—7 W. Va. 585; 17 Gratt. 541.

*The Court is not bound to give the same instruction twice.*—31 W. Va. 662, 681.

*Nor to correct a faulty instruction.*—35 W. Va. 73.

*Harmless error. Instructions.*—39 W. Va. 87, 91-2; 21 W. Va. 224, 230; 34 W. Va. 155.

*Verdict of jury will not be set aside unless plainly contrary to weight of evidence. Power to set aside exercised with great caution. Opinion of trial court refusing to set aside entitled to respect.*—2 W. Va. 591; 7 W. Va. 665; 12 W. Va. 116; 21 W. Va. 741, 755; 23 W. Va. 549, 558; 24 W. Va. 814, 825; 33 W. Va. 319, 336; 34 W. Va. 155; 36 W. Va. 758; 37 W. Va. 744; 38 W. Va. 147.

HOLT, PRESIDENT:

On writ of error to a judgment of the Circuit Court of Wood county, in an action of *assumpsit*, for five hundred and fifty four dollars and seventy six cents, rendered on the 7th day of March, 1894, in favor of the plaintiff and appellee, Shrewsbury, against the defendant and appellant, James W. Tufts.

Plaintiff in error (defendant below) Tufts, was a manufacturer of soda-water apparatus and silver-plated ware in the city of Boston. By letter of April 14, 1884, plaintiff; Shrewsbury, applied to Tufts for employment as salesman. By letter dated August 13, 1884, Tufts wrote to Shrewsbury, offering to employ him as sales agent for Tufts' goods in the territory of West Virginia, part of the state of Mary-

land, and city of Washington. Mailed with this letter was a printed circular showing terms and percentage to agents. Shrewsbury, by letter of 16th August, 1884, acknowledged receipt of the offer, and made some inquiries before accepting it. On 20th August, 1884, Tufts answered, and closed by saying: "Please let me hear from you at once. It is not necessary for you to come to Boston. Your outfit and a few samples can be sent you at Parkersburg." By letter of 30th August, 1884, Shrewsbury writes, "I accept your proposition, as the letter of 20th inst. removes the doubt I had at the start." By letter of 2d September, 1884, Tufts acknowledged the receipt of Shrewsbury's letter of 30th August, saying, "Will have P. W. [plated ware] outfit made up at once and sent you. Draw for funds as needed." Thereupon Shrewsbury closed up his business with his former firm, and on the 22d day of September, 1884, made a draft on Mr. Tufts, and on the 23d day of September, 1884, started on his first trip in his employ, and continued until the first day of July, 1889, and during that time never met Mr. Tufts. His business was to sell on commission, and when he quit the service of Mr. Tufts, in the summer of 1889, he claimed that there was a balance due him of one thousand three hundred and sixty six dollars and twenty two cents for commissions earned on sales made during those five years, improperly retained by Mr. Tufts and not paid over. For this he brought suit, and obtained the judgment already mentioned.

The defendant James W. Tufts, appeared, entered the plea of *non assumpsit, non assumpsit* within five years, and an account of set-offs, by which it would appear that on his contention, Shrewsbury had received more than he was entitled to, by the sum of thirty two dollars and ninety eight cents; that the contract with Shrewsbury was not in writing, but was a verbal one. Shrewsbury claims that it was entirely in writing, made up of the letters and circular already mentioned. Defendant claims the contract to have been verbal, and as follows: Shrewsbury was to sell the goods of Tufts, subject to Tufts' approval, and to receive a commission on all sums received by Mr. Tufts on account of orders that Shrewsbury might

take from the customers of Tufts, and all commissions were subject to rebates and reductions for any discount, allowances, or expenses—and that a yearly account was made out and sent to Shrewsbury, showing all commissions and losses.

Plaintiff's account is made up of commissions on attorney's fees and on goods taken back, which commissions, as he contends, were improperly withheld from him; he alleges that the first statement showing the same withheld came to him in January, 1889; and on that account, among others, he severed his connection with Mr. Tufts in July, 1889, and demanded a settlement of these commissions now in suit.

Upon this point turns the merits of the controversy, and in connection with it, the questions: (1) Was the contract verbal, or in writing? (2) Were these annual statements showing the nature of Shrewsbury's account with Tufts, sent to him in January of each year, retained by Shrewsbury without complaint? And if so, the effect thereof. On this point full latitude was accorded the defendant in his proof. Testifying himself, he says: "My agreement or arrangement with Mr. Shrewsbury was a verbal one only. He was to take orders for goods of my manufacture, subject to my approval, and he was to receive a commission on all sums paid to me on account of the orders taken by him; and these commissions were subject to allowances, rebates, or drawbacks for any discounts, allowances, or expenses, of any nature. Mr. Shrewsbury was not employed by me on a salary." On the other hand, plaintiff testified that he never met defendant; that the contract was created solely by correspondence; that he did not know that any part of attorney's fees were charged to him until he received a statement in January, 1889; that he was dissatisfied therewith; left Mr. Tufts' service in July, 1889; that he had no such contract, and knew of no such usage.

The following instructions were given on behalf of plaintiff, to which defendant excepted: "(1) If the jury believe from the evidence that the plaintiff made a contract with the defendant, and that such contract is expressed in letters, or in several writings, and a printed circular, and is the

only contract between them, then the contract between the plaintiff and the defendant is a contract in writing, and the parties are bound by the terms of the written contract. (2) If the jury believe from the evidence that the plaintiff became an agent for the defendant under a contract, and if the jury further believe from the evidence that the only contract between the plaintiff and defendant is expressed in letters from the defendant to the plaintiff bearing date on the 13th and 20th days of August, 1894, inclosing a printed circular mentioned therein, and in letters from plaintiff to defendant bearing date on the 16th and 30th days of August, 1884, and if the jury further believe from the evidence that the plaintiff, by a letter dated the 30th day of August, 1884, accepted the terms proposed to him by the defendant, as shown by the letters and circular aforesaid, without anything other or further in relation thereto between them, then such letters and circular constitute the contract between the plaintiff and the defendant; and the parties are bound by the terms thereof, except so far as the same may have been subsequently modified by mutual agreement of the plaintiff and of the defendant, if, from the evidence, the jury believe that any such modification was subsequently made. (3) If the jury believe that the contract between the plaintiff and the defendant consisted of the letters and the circular mentioned in the last instruction above, then such contract was a contract in writing, and it bears date from the acceptance by the plaintiff of the terms proposed by the defendant, in the year 1884. (4) The court instructs the jury that the defendant must account to the plaintiff for all compensation and amounts of money which the defendant admits or shows by his accounts in evidence to be properly credited to the plaintiff, and the defendant is entitled to be credited with such amounts as are proper to be deducted under the contract and arrangements between the plaintiff and the defendant. (5) The court instructs the jury that the counsel for the plaintiff have agreed that the accounts offered by the defendant in evidence, and taken from his books, shall have the same effect as though the books themselves had been duly proved and produced in court; but, unless the

jury believe from the evidence that the books from which said accounts were taken were books of original entry, then the same are not evidence in favor of the defendant on this trial. (6) The jury are instructed to disregard the testimony of any witness as to matters of which it appears he has no knowledge, and the court excluded all such testimony from the jury."

The court gave for defendant the following instructions: "*First.* The jury are instructed that the burden of proof is on the plaintiff to make out his case by a preponderance of the evidence. In this case the plaintiff's claim, according to his bill of particulars, is for commissions alleged to have been retained improperly, and not paid to him, as shown by statements of account rendered and filed with said bill of particulars; and the jury are instructed that the burden is on the plaintiff to show, by a preponderance of the evidence, that the items referred to in such statements of accounts, and charged in his bill of particulars, are not lawful charges against the plaintiff; otherwise, he is not entitled to recover in this action, and you must find for the defendant." And the defendant further moved the court to further instruct the jury as follows; omiting the words in italics, which are inserted by the court, and using the word "an," in brackets, in place of the word "such," inserted by the court: "*Second.* The jury are instructed that if they believe from the evidence that there was an account stated between the parties, then the effect of [an] *such* account stated is to cast the burden of proof upon the party complaining to show fraud, error, or mistake, and after a reasonable time an account rendered, and not objected to, becomes admitted as correct; and if you believe from the evidence in this case that the defendant rendered the plaintiff a statement of his account with the defendant at or about the close of each year, during the time the plaintiff was in the defendant's employ, and afterwards, and that the plaintiff had opportunity, by the exercise of reasonable care and diligence, to discover any alleged error in the same, then, as to all the items of alleged error in such accounts stated, and not within a reasonable time thereafter specifically called to the attention of the defend-

ant by the plaintiff, he is concluded and estopped, and, as
to all such items charged in the plaintiff's account, you
must find for the defendant." But the court refused to
give the said instruction No. 2 as prayed for, and, in lieu
thereof, gave said instruction as modified by the court.
The defendant moved the court to instruct the jury as fol-
lows; omitting the words in italics, which were inserted by
the court, and using the words in brackets, which were
stricken out by the court: "*Third*. The jury are further
instructed that [he who has been silent as to his alleged
rights when he ought to have spoken is not permitted to
speak when he ought to be silent; and] if you believe from
the evidence in this case *that* the plaintiff received, from
time to time, *from the defendant*, statements of his account
with the defendant, and was thereby afforded the oppor-
tunity to see the items in his bill of particulars mentioned,
charged against him, and remained silent, and did not ob-
ject to the charge of such items against him within a
reasonable time after each of such statements were so ren-
dered, then the defendant had the right to infer acquies-
cence of the plaintiff in the correctness of such charges,
and the plaintiff is now estopped to deny the correctness of
all such items to which he did not object in proper time;
and, as to all such items of the plaintiff's account, you
must find for the defendant." But the court refused to
give the said instruction No. 3 as prayed for, and, in lieu
thereof, gave said instruction as modified by the court.

The following instruction was refused: "*Fourth*. The
jury are further instructed that, under the terms of the con-
tract proven by the plaintiff, he was to receive from the de-
fendant commissions only on actual payments; and if you
believe from the evidence in this case, and from the deal-
ings afterwards had between the plaintiff and the defend-
ant, they mutually interpreted the said contract to mean
net cash payments, deducting the expenses of collection,
lawyers' fees, *etc.*, or that the defendant so interpreted the
said contract, and, by the various statements rendered him
by the defendant, the plaintiff had notice thereof, and, af-
ter such notice, remained silent for a long time, and per-
mitted the defendant to remain in ignorance of any differ-

ent construction thereof by him, and the plaintiff continued to deal with the defendant without having, within a reasonable time after first discovering the interpretation of the contract placed upon it by the defendant, the plaintiff was afterwards, and is now, estopped, and concluded from denying that the interpretation of the defendant was the true interpretation of said contract."

The defendant moved the court to instruct the jury as follows; omitting the words in italics, which are inserted by the court: "*Fifth.* The jury are further instructed that, under the terms of the contract proven by the plaintiff, he is not entitled to commissions on goods returned, but only on actual cash payments made on the goods sold by him, at the *time of sale or afterwards;* and, if you believe from the evidence in this case that any of the items in the bill of particulars mentioned were for commissions on goods returned, as to all such items you must find for the defendant." But the court refused to give said instruction No. 5 as prayed for, and, in lieu thereof, gave said instruction as modified by the court. "*Sixth.* The jury are further instructed that the plaintiff can not recover in this action, upon the issue joined on the plea of the statute of limitation, any of the items which accrued to the plaintiff more than five years before the date of the institution of this suit; and, as to all such items, you must find for the defendant;" which instruction the court gave as requested. "*Seventh.* The jury are further instructed that if you believe from the evidence in this case that, after the contract of employment was entered into between the plaintiff and defendant, defendant so interpreted the same as entitled him to charge against the plaintiff the cost and expenses of collecting the cash payments on goods sold by the plaintiff, including the amounts retained by attorneys for collections made, and the plaintiff had notice thereof, by the statements of his accounts or otherwise, and did not, within a reasonable time after such notice was first given to him, object to such interpretation by the defendant, but, by silence, acquiesced therein, and afterwards continued to act under such contract and to take the benefits thereof, then the plaintiff was estopped and concluded thereafter from placing a different

construction on said contract, no matter if he did afterwards, and later on, make objection to such interpretation by the defendant," which instruction the Court gave as requested.

And the defendant moved the court to further instruct the jury as follows: "*Eighth.* The jury are instructed that the plaintiff, having offered in evidence the several statements of his accounts numbered 1, 2, 3, 4, 5, 6, is bound by all the facts appearing therein, except so far as he may have, by positive evidence or testimony, shown that any of the items therein are erroneous, and the burden of proof is on him to show this; and unless, by such proof, he has shown any of the items of said accounts to be erroneous, the said accounts and the items thereof must be taken and treated by you as true." But the Court refused to give the said eighth instruction.

The defendant moved the court to instruct the jury as follows; omitting the words in italics, which are inserted by the court, and using the words in brackets, which were stricken out by the court: "*Ninth.* The jury are further instructed that, though you may believe from the evidence that the contract between the plaintiff and defendant may have been originally expressed in written letters and printed circulars, yet, if you believe that any of the terms of the contract so expressed were ambiguous, you have the right to look to *the surrounding circumstances existing when the contract was made, at the situation of the parties, the subject-matter of the contract, and all* the subsequent acts *of the parties under said contract* [admission and declarations], to determine the meaning of the contract and what was the real *intention and* contract between the parties." But the court refused to give the said instruction No. 9 as prayed for, and, in lieu thereof gave said instructions as modified by the court.

Was the contract verbal or written? Nothing is more common nowadays than the making of contracts by written correspondence. See *Coal Co.* v. *Richter* (1888) 31 W. Va. 858, 863 (8 S. E. 609); *McKeefrey* v. *Iron Co.* (1893) 17 U. S. App. 35 (5 C. C. A. 482, 56 Fed. 212). If one makes to another an offer in writing, by letter, implying noth-

ing to be done except to assent or decline, and the latter
accepts it, adding no qualification, there is thus constituted
a mutual consent to the same thing; in other words, a con-
tract. And the question of the sufficiency of the transac-
tion to work this result is one of law, for the court. See
Bish. Cont. § 322. The defendant, Tufts, by his letter of
the 13th day of August, 1884, accompanied by his cir-
cular of memoranda for agents, and his letter of 20th
August, 1884, fixing a time for his agent to commence, im-
plied nothing to be done on the part of plaintiff, Shrews-
bury, but to accept or decline; and by his letter of 30th
August, 1884, Shrewsbury accepted the offer uncondition-
ally, and without qualification. So far as I can see the
terms are not so incomplete or indefinite as to leave it un-
certain what it was to which the parties mutually con-
sented. *Id.* § 316. The territory in which Shrewsbury
was to act as salesman of defendant's soda apparatus and
silver plated ware was definitely fixed; compensation of the
agent set forth and marked, *viz.* 20 *per cent.* commission.
The above commissions are, however, subject to the follow-
ing qualifications: To receive commission only on actual
cash payments, *etc.*, followed by six other qualifications,
not now material, and signed by James W. Tufts, Boston,
January 1, 1876. The outfit was furnished the plaintiff,
and his agency as salesman under this contract began in
the summer of 1884, and ended in the summer of 1889.
The circuit court held—inferentially, at least—that it was
a contract in writing, and such decision was right. See
*Machine Works* v. *Chandler* (1877) 56 Ind. 575, 581. No
question was raised as to whether such transaction, or any
part of it, took place. So in this case there was, as to that,
no question of fact to be submitted to the jury. But the
question did arise, what does the qualification No. 1, given
above, mean, as applied to the facts of this case? Plaintiff's
bill of particulars, or account specifying the nature of the
claim for which he sues, is made up of three sets of items:
(1) Goods taken back, six hundred and sixty four dollars
and thirty two cents; which need not be considered, for no
commission was allowed on them by the jury. (2) Items
charged as admitted, two hundred and forty five dollars

and eighty six cents, as per statement of February, 1892; which seem to have been found by the jury. (3) Attorney's fees, amounting to two hundred and sixty seven dollars and fifty three cents; which also seem to have been allowed by the jury. Here the question arises, does this qualification mean commission on only actual cash payments, inclusive or exclusive of what was paid out on attorney's fees to collect, *etc?* This was hotly contested, as to the question of competency of the proof offered, as a question of law, before the court, and what the jury might consider in determining the meaning of the term, and, as a question of fact, before the jury; the defendant claiming that, by the usage of his business, there must be read into the contract, actual cash payments, "exclusive of sums paid for attorney's fees," *etc.* Many modern contracts in writting do not directly express their full meaning, but leave some things to be brought into them, as mutually understood from the common usage of the business to which they relate. Even if one party, only, conducting a particular business, has a uniform usage therein, it may be presumed to have entered into a contract with another who knew of it; but such knowledge must appear either from direct testimony, or from adequate notoriety. Bish Cont. § 458; *Society* v. *Burford*, 70 Pa. St. 321. In determining this question, the jury were told that they could look to the surrounding circumstances existing when the contract was made, at the situation of the parties, the subject-matter of the contract, and all subsequent acts of the parties under said contract, in order to determine the meaning of the contract, and what was the real intention and contract of the parties. The usage of the business, in that regard, is one of the circumstances surrounding the parties at the making of the contract, and if known to the plaintiff at the time, would be deemed to be written into the contract, in construing the phrase, "to receive commission only on actual cash payments." The court left the phrase open to such explanation by such evidence of surrounding circumstances, including the known usage of the business, not for the purpose of changing or varying the language, but to put the court and jury in the situation of the contracting parties. Of this the appellant can not complain.

Bills of exceptions No. 1 and No. 2 were taken to the ruling of the court against defendant in admitting two letters to be read to the jury—one from Shrewsbury to Tufts, dated 13th of January, 1891, and Tufts' reply, dated 17th of January, 1891. In the conclusion of plaintiff's letter he says: "I also protest most earnestly against being charged with a portion of the attorney's fees in cases which have been half paid, and in which you have gotten the goods back. Please indicate where I am wrong." Mr. Tufts closes his reply as follows: "In all matters regarding your commission account, you have been treated exactly the same as if still in my employ, and as all other agents *share*. The rules, whether just or unjust, are those upon which you have always worked while in my employ, and your employment by me was conditional upon your acceptance of them." Also, letter of Shrewsbury in reply, dated 21st of January, 1891. They were relevant as tending to show that Shrewsbury did not acquiesce in the deduction of attorney's fees from his commission, and after Shrewsbury had been asked, as a witness, by defendant's counsel, if he had ever made any objection to Mr. Tufts because of these attorney's fees being withheld out of his commission, as a charge against him. Whether it came too late or not presented a different question. As to the objections being made within a reasonable time, *etc.*, see *Ruffner* v. *Hewitt*, 7 W. Va. 585, 607.

Bill of exceptions No. 3: Shrewsbury was asked whether or not, at any time, he had authorized the defendant to charge him attorney's fees and other deductions. This presents the same question of estoppel. Defendant attempted to show by his own evidence that these deductions from commission were correct. I should think Shrewsbury had a right to testify that he had never expressly assented to them. If such assent resulted from the estoppel arising from an account rendered becoming, by acquiescence, an account stated, that presents a different question.

Bills of exceptions Nos. 4, 5, 6 and 7 were points raised on objections to testimony; and, being regarded by counsel for plaintiff in error as minor matters, they are not relied on here.

This brings us to the instructions. It is conceded that the six instructions given for the plaintiff state the law correctly, but it is objected that they are too general, and therefore misleading. None of them can be called abstract. Three of them bear on the question already discussed, was the contract verbal or written?—around which clusters the important evidence, as the main point in litigation. No objection of any kind is made against the other three. Six instructions were given for defendant, the plaintiff in error. Some alterations made by the court are complained of but they were merely verbal, rendering the instructions more definite and apposite to the case on trial. Instruction No. 4, refused, was comprehended as far as it ought to go in instructions No. 5 and No. 7, which were given. No. 8, rejected, related to the estoppel of plaintiff, and it was properly regarded as being already comprehended in instructions which stated the law correctly. No. 9 was based on the theory of its being a written contract, created by correspondence; and, in that view, it was proper for the court to make the verbal changes complained of. These accounts, 1 to 6, were shown in evidence to be taken from the bill of particulars filed as set-offs by defendant, and were used to show from what source plaintiff collected the charges made by defendant, and which plaintiff claimed were not warranted by the contract between them. The court had already instructed the jury that, if they believed from the evidence that there was an account stated between the parties, then the effect of such account stated is to cast the burden of proof upon the party complaining, to show fraud, error, or mistake, and after a reasonable time an account rendered and not objected to becomes admitted as correct, etc. I can not see what deficiency there was in this instruction, to the prejudice of defendant. See *Townes* v. *Birchett* (1841) 12 Leigh, 173; *Robertson* v. *Wright* (1867) 17 Gratt. 534; *Ruffner* v. *Hewitt* (1874) 7 W. Va. 585; *Wiggins* v. *Burkham* (1869) 10 Wall. 129; *Anding* v. *Levy* (1879) 57 Miss. 51, note. As to the evidence on this point, plaintiff, on examination in chief, and especially on cross-examination, states repeatedly that as soon as his attention was called to the charge against him for attorney's fees, which

29

was for the first time in the statement received in January, 1889, he protested against it, and called for an explanation; that he never met Mr. Tufts; was not in Boston until 1886, was there in the spring of 1887 or 1888; and that although he did not ask for any settlement, because the accounts were still running, yet he did discuss the matter with Mr. North, the general manager, and the only one with whom he conferred in regard to his connection with the business.

This brings us to the motion for a new trial. Is the verdict wholly without evidence on any essential point, or is there a clear and decided preponderance of evidence against the verdict, or is it against the law of the case, as given the jury by the court?

There is no question that plaintiff was employed as a traveling salesman by Mr. Tufts and acted as such agent from the summer of 1884 to the summer of 1889. His employment was by written contract, entered into by written correspondence, which was consummated by plaintiff's acceptance of defendant's offer. There is no question that the services were rendered and the commissions earned. Of the account of one thousand three hundred and sixty six dollars and twenty two cents, sued for, the sum of six hundred and sixty four dollars and thirty two cents was for prospective commissions retained on goods sold, but taken back. That item was virtually excluded by the instruction of the court, and not found by the jury. The item of two hundred and twenty six dollars and forty four cents balance not barred by the statute, was the amount of commissions held back to satisfy plaintiff's *pro rata* share of money expended in paying attorney's fees, and this depended on the construction of the written contract already discussed. The item of two hundred and forty five dollars and eighty six cents is an item admitted to be due when the unsettled accounts are paid. It was shown to have been due more than three years at the time of the trial, and seems to be treated as an admitted item, in the sense that it will be payable at some time, if not yet collected. These two items, with some two or three years' interest, seem to have made up the verdict. The court committed no error—certainly none that defendant can complain of—in giving the

jury the law of the case. There were two disputed questions of fact: (1) Was plaintiff's *pro rata* share of attorneys fees to be charged against his commission or not? (2) Was he bound to accept as correct the current yearly accounts rendered by defendant? These issues of fact, about which we may say, for our purpose, the evidence was conflicting, the jury found for the plaintiff. On neither one of these issues can we say that there was a clear and decided preponderance of evidence against the finding of the jury.

On the 8th day of March, 1893—the day after the judgment had been rendered on the verdict in favor of Shrewsbury—the defendant, Tufts (defendant below) filed an exemplified copy of the record of the case of *A. D. Puffer & Sons* v. *C. M. Shrewsbury*, showing the process of garnishment issued therein against Tufts as a debtor of Shrewsbury. And the defendant, Tufts, moved the court to suspend judgment and execution until his liability as garnishee could be ascertained in the action of A. D. Puffer & Sons, pending in the city of Boston. The circuit court of Wood county refused to suspend the execution of the judgment, and defendant excepted. It is contended by plaintiff in error that he could not pay off the judgment in this case, if he desired to do so, for the reason that he may be compelled to pay it over again, as garnishee in the pending action of *Puffer & Son* v. *Shrewsbury*. This motion was properly overruled. One reason given is the right of the plaintiff, Shrewsbury, to prosecute his suit against Tufts in the circuit court of Wood county, in this state, having attached, that right could not be arrested or taken away by any proceeding in the court of Massachusetts. This would produce a collision in the jurisdiction of courts that would extremely embarrass the administration of justice. See *Wallace* v. *McConnell*, 13 Pet. 136; *Whipple* v. *Robbins*, 97 Mass. 107; *Bank* v. *Rollins*, 99 Mass. 313. See 8 Am. & Eng. Enc. Law, 1169; *Silver Co.* v. *Smith*, 163 Mass. 262 (39 N. E. 1116). If the garnishment is under process from a court of a different jurisdiction from that in which the judgment sought to be garnished was entered, there seems to be no doubt that the garnishment can not be permitted.

1 Freem. Ex'ns § 166, citing *Sievers* v. *Wheel Co.* 43 Mich. 275 (5 N. W. 311); *Noyes* v. *Foster*, 48 Mich. 273 (12 N. W. 221); *Henry* v. *Mining Co.* 15 Fed. 649; *Young* v. *Young*, 2 Hill (S. C.) 426. It is governed by the rule of priority in assuming jurisdiction, and the rule is reciprocal. 2 Wade Attachm. §§ 494, 495; *Cochran* v. *Fitch*, 1 Sandf. Ch. 142. See Code 1891, p. 741, c. 106; *Swann* v. *Summers* (1881) 19 W. Va. 115; Drake, Attachm. (6th Ed.) § 702. See *Spicer* v. *Spicer* (1851) 23 Vt. 678; Waples, Attachm. p. 355.

(1) Such a suspension of the execution of judgment would be a species of injunction without security. Have we the right, at such a stage, and in that way, to stop the judgment creditor indefinitely, in order to see, by a proceeding in a foreign court, whether some third person may not be able to establish some debt or claim against him. (2) It might be a serious inconvenience, impeding and leading to the embarrassment of the due administration of justice. (3) To be able to use for such purpose a foreign suit, later in time, would be a standing temptation to collusion and other devices to hinder and delay the collection of judgments. It is not alleged or suspected in this case, but in such case the thought would arise at once, suppose the defendant here controls the proceeding there? (4) The suit here being first in time, it would seem to be the defendant's proper course to seek relief from having to pay the debt the second time by asking the home court to require the tardy creditor to make his money in some other way.

The motion to suspend execution was properly overruled, and the judgment complained of must be affirmed.