McNISH, Plaintiff, v. BURCH et al, Judges of the Circuit
Court, Defendants.

(207 N. W. 85.)

(File No. 5849. Opinion filed January 23, 1926.)

**Garnishment—Judgments—Judgment Can Be Garnished Only in the
Same Court in Which It Was Taken.**

> Rev. Code 1919, Secs. 2453, 2472, relating to garnishment as
> far as garnishment of debt evidenced by judgment is con-
> cerned, held to apply only to judgments of same court in
> which garnishment proceeding is instituted.

Application by C. H. McNish for writ of prohibition against
N. D. Burch and another, Judges of the Circuit Court in and
for Lyman County.  Writ granted.

*Alan Bogue,* of Parker, and *E. E. Wagner,* of Mitchell, for
Plaintiff.

*Brown & Brown,* of Chamberlain, for Defendants.

Plaintiff cited: Hamil v. Peck (Colo.), 52 Pac. 216; Menes
v. Mathews, 197 Fed. 633; Wallace v. McConnell, 13 Peters, 136,
10 L. ed. 95; Lowenstein v. Levy, 212 Fed. 383; Wabash R. R.
Co. v. Tourville, 179 U. S. 322, 45 L. ed. 210; M. K. & T. Ry. v.
Bradshaw (Okla.), 132 Pac. 327; Scott v. Rohman (Neb.), 62 N.
W. 46; Sievers v. Woodburn (Mich.), 5 N. W. 269.

Defendant cited; Hardwick v. Harris, 163 Pac. 253, L. R. A.
1917D 1137.

GATES, P. J.  A complete statement of the history of the
litigation leading up to the bringing of this proceeding would
present an extremely complicated state of facts, and would cover
many pages.  Suffice it to say that it grows out of the cases of
Birken v. Hickey, 42 S. D. 472, 176 N. W. 137, and Birken v.
Tapper, 45 S. D. 600, 189 N. W. 698, 24 A. L. R. 832, which see.
In the latter case Birken secured a judgment against Tapper in
the circuit court of Turner county, which we affirmed.  Tapper
deems himself damaged by Birken by reason of the unsuccessful
attachments in Birken v. Hickey.  He assigns said cause of action
to Dunbar.  Dunbar brings suit against Birken in the circuit court
of Lyman county, and attempts to garnishee the judgment, and
Tapper's liability thereon, rendered in Turner county.  McNish,
as the assignee of said judgment, brings this original proceeding

in this court to prohibit the circuit judges of the eleventh circuit, of which Lyman county is a part, from proceeding with the garnishment. Judge Bartine makes return that, by reason of his prior professional employment in certain phases of the litigation, he has not taken ,and will not take, part in the case pending in Lyman county. Judge Burch makes return setting forth the proceedings that have thus far been had in the case.

The only question we find it necessary to discuss and determine is whether garnishment process from the circuit court of Lyman county is available to reach the debt upon which judgment has been rendered in the circuit court of Turner county. Apparently by the letter of the statute it is, because of the provisions of sections 2453 and 2472, Rev. Code 1919, which read as follows:

"Section 2453. *When Creditors May Proceed by Garnishment.* Any creditor shall be entitled to proceed by garnishment in any court having jurisdiction of the subject of the action, against any person, including a public corporation, who shall be indebted to or have any property whatever, real or personal, in his possession or under his control, belonging to such creditor's debtor, in the cases, upon the conditions and in the manner prescribed in this chapter.  *  *  *"

Section 2472. *When Defendant May Not Sue Garnishee.* No action shall be commenced by the defendant or his assignee against a garnishee upon any claim or demand liable to garnishment, or to recover any property garnished, nor execution be issued upon a judgment in favor of the defendant against such garnishee subsequent to the service of the garnishee summons upon him, until the termination of the garnishee action; and, if an action shall have been commenced or an execution issued, it shall be stayed by the court or a judge thereof upon the garnishee's application, except that upon cause shown, the court or judge may by order permit the commencement of such an action, or the issuing of an execution, or the further prosecution of one stayed."

It will be noticed that the latter section expressly refers to a debt evidenced by a judgment. If by said section it was intended by the Legislature that garnishee process from any court could issue upon the debt evidenced by the judgment of another court, then it could issue, not only from the circuit court of another circuit, but it could issue from the federal court of this or another

district, and the hands of the court in which the judgment was rendered would be tied by the garnishment process. Likewise it could be claimed that the judgments of the federal courts and of the courts of other states would be subject to garnishment in this state.

In the latter part of said section 2472 it will be noticed that, "the court, or a judge thereof," may permit execution to be issued on the judgment which is sought to be garnished. Does this mean the court in which the judgment sought to be garnished was rendered if different from the court where the garnishment proceeding is pending? If it does, then an execution from both courts might issue and the original judgment debtor subjected to double payment. Or does the language refer to the court in which the garnishment proceeding is pending? Surely the latter court has no power to stay the issuance of execution in the former. As was said in Waples on Attachment and Garnishment, p. 596:

"The court, being possessed of jurisdiction, has the exclusive right of effectuating its decree by execution. No other equal tribunal can step before it and say that the judgment debtor must pay to some person other than the judgment creditor, without interfering with the jurisdictional power to execute the judgment rendered."

As has been stated in several cases, if it was the legislative intent that a judgment of another court was to be subject to garnishment, then the Legislature should have pointed out the steps to be taken to make the garnishment effective. Its failure to do so is persuasive that judgments of the same court only were in contemplation.

In considering this case we are not unmindful of the decision in Hardwick v. Harris, 22 N. M. 394, 163 P. 253, L. R. A. 1917D, 1137, a leading case presenting the minority view, but that view is contrary to the great weight of authority, and, to our minds, the majority view is supported by the better reasons. Among others, the majority view is supported by the following: Detroit F. & M. Ins. Co. v. Stewart, 123 Ark. 42, 184 S. W. 438; Hamill v. Peck, 11 Colo. App. 1, 52 P. 216; Elson v. C., R. I. & P. Co., 154 Iowa 96, 134 N. W. 547, 43 L. R. A. (N. S.) 531, Ann. Cas. 1914A, 955; Sievers v. Woodburn, 43 Mich. 275, 5 N. W. 311; Boyle v. Musser-Sauntry L., etc., 88 Minn. 456, 93 N. W. 520,

97 Am. St. Rep. 538; Tourville v. Wabash R. Co., 148 Mo. 614, 50 S. W. 300, 71 Am. St. Rep. 650; Perkins v. Guy, 2 Mont. 15; Scott v. Rohman, 43 Neb. 618, 62 N. W. 46, 47 Am. St. Rep. 767; Shinn v. Zimmerman, 23 N. J. Law 150, 55 Am. Dec. 260; Heyl v. Taylor, 64 Misc. Rep. 31, 117 N. Y. S. 916; Kinston Mfg. Co. v. Freeman, 175 N. C. 212, 95 S. E. 367; Am. Bank v. Snow, 9 R. I. 11, 98 Am. Dec. 364; Shrewbury v. Tufts, 41 W. Va. 212, 23 S. E. 692; Wabash R. Co. v. Tourville, 179 U. S. 322, 21 S. Ct. 113, 45 L. ed. 210; Franklin v. Ward, 3 Mason 136, 9 Fed. Cas. No 5055; Thomas v. Wooldridge, 2 Woods 667, 23 Fed. Cas. No. 13918; Henry v. Gold Pack Min. Co. (C. C.), 15 F. 649, 5 McCrary 70; Rosenstein v. Tarr (C. C.), 51 F. 372; Menees v. Matthews (D. C.), 197 F. 633; Drake, Attch., § 625; Waples, Attch. & Garn., p. 596; 12 R. C. L. 807.

In Thomas v. Wooldridge, supra, Mr. Justice Bradley said:

"Perhaps the best reason for the rule is, that an attachment of a judgment would be an inconvenient and dangerous interference with judicial proceedings, opening the door to fraud and collusion for the purpose of preventing the due course of justice. * * * A court has not done with a case when judgment has been rendered. Many things have often to be done besides issuing executions, many adjustments of rights have to be made, which require that the court should keep the supervision and control of its own judgment in its own hands. Any interference by other courts with this control, or with the prerogatives of executing its judgments and decrees in its own way, is calculated to excite jealousies between the courts concerned. We think the rule is a good one, and that it ought to be sustained."

In Hammill v. Peck, supra, the court said:

"The courts which take a contrary view simply say, that a debt is none the less a debt because it is merged in a judgment, and as the garnishment statutes make all debts subject to its process, allowing no exception, judgment debts must be included. They admit that hardship may be inflicted upon the debtor, that in order to protect himself he may, at his own expense be compelled to institute proceedings to restrain the sale of his property under execution issued upon the original judgment; that in some instances he may be compelled to pay twice and be relegated for his indemnification to a suit against the creditor in the judgment

for the recovery of the amount so doubly paid—a remedy which would carry with it no relief if the creditor happened to be insolvent. It would seem that the mere statement of the possible injuries which might result to the garnishee would be sufficient to condemn the doctrine unless it be supported by the imperative mandates of a statute. These decisions would appear to have overlooked or ignored certain fundamental principles upon which all garnishment statutes are based, which are recognized in all jurisdictions, and which are law equally with the statute. These are, that the garnishee should not be placed by the garnishment in any worse position than he would be if the original creditor instituted an action against him for the collection of the debt and prosecuted it to judgment; that the debt must be fixed, certain and of such character and so far under the control of the garnishee that he may lawfully withhold payment to the original creditor, and that payment of the garnishee judgment will operate as an acquittance of the debt, which he may successfully plead in bar of an action for its recovery by his immediate creditor. Tested by these essential requirements we cannot see how the rule contended for can be maintained. Under it the garnishee would unquestionably be placed in a worse position. He is ready and willing to pay the debt to whomsoever the court says he may pay it and receive a discharge, but he is told that he must decide the matter for himself and pay at his peril. If he pays it to the garnisher, under the garnishee judgment, then the judgment creditor may move against his property under execution, and at his own cost and expense he must institute and prosecute injunctive or other proceedings to protect himself. If he pays to the judgment creditor, then he must incur a like expense to defend himself against the garnisher. Under what principle, and for what reason can it be claimed that the garnisher should escape this burden? Why should he not be required to go into the court which rendered the judgment and ask that he be subrogated to the rights of the judgment creditor? He selects his own forum—the debtor not. Then the one court would have control of the whole subject-matter, no conflict of jurisdiction would arise, and no additional tax or burden would be imposed upon the debtor. Surely the debtor has some rights which ought to be respected."

We refrain from making further quotations, but, being con-

vinced that the garnishment statutes should be interpreted as applying only to judgments of the same court in which the garnishment proceeding is instituted, we are of the opinion that the requested writ of prohibition should be granted. It will be so ordered.

Inasmuch as Judge Burch has been succeeded by Judge Cash, a substitution should be stipulated before the entry of judgment.

Note.—Reported in 207 N. W. 85. See, Headnote, American Key-Numbered Digest, Garnishment, Key-No. 44, 28 C. J. Sec. 230.