W. M. TREASE v. W. A. HAGGIN, Appellant.

**Notes:** MATURITY AS TO INDORSER. One of two joint makers of a note executed a mortgage to secure it, stipulating that, in case of a default in the interest, the principal should become due. For failure to pay the interest, the principal was declared due under the mortgage, judgment was entered thereon against the mortgagor, and the mortgage was foreclosed. *Held*, that the note did not thereby become due, so as to charge the payee on his indorsement made on the transfer of the note.

PRESENTMENT. The presentation of a note not payable at any particular place at the old place of business of the maker and at a bank in the *town* where it is payable, is not such a demand as will charge an indorser on his indorsement, where no inquiry was made as to the makers' whereabouts.

*Appeal from Marshall District Court.*—HON. G. W. BURN-HAM, Judge.

TUESDAY, JANUARY 31, 1899.

ACTION to charge the defendant as indorser of a promissory note. Trial to the court, and judgment for plaintiff for seven hundred and twenty-three dollars and eighty-five cents. Defendant appeals.—*Reversed.*

*Albrook & Lundy* for appellant.

*J. L. Carney* for appellee.

GIVEN, J.—I. On February 14, 1894, Munns West and W. M. West executed and delivered to W. A. Haggin their two joint promissory notes, payable to W. A. Haggin or order, at Union, Iowa, one for three hundred and fifty dollars and ninety-two cents, payable one year after date, and the other for seven hundred and sixty-eight dollars, payable two years after date, each bearing interest at eight per cent., payable annually, and eight per cent. on interest due. On the same day Munns West executed and delivered to W. A. Haggin his

mortgage on certain real estate to secure the payment of said notes, which mortgage provides as follows: "And it is further agreed that, if default shall be made in the payment of said sums of money, or any part thereof, principal or interest, then the whole indebtedness shall become due, and the party of the second part, his heirs and assigns, may proceed by foreclosure," etc. Prior to maturity, the defendant transferred said notes for value, by indorsements in blank, the first falling due to one Russell, and the other to plaintiff, Trease, with an assignment of the mortgage to plaintiff indorsed thereon. The Wests failing to pay said three hundred and fifty dollar note, or any of the interest due, plaintiff, on the twenty-seventh day of February, 1895, commenced an action against Munns West and W. M. West for judgment on said seven hundred and sixty-eight dollar note and for decree foreclosing said mortgage; alleging that, because of the failure to pay said first note and the interest due on both notes, the whole indebtedness had become due. No demand for payment was made upon the makers, nor was there any protest or notice of protest, prior to the bringing of said action, and this defendant was not made a party thereto and had no notice thereof. On May 3, 1895, Munns West failing to appear, default and judgment for eight hundred and forty-six dollars and sixty cents and decree of foreclosure was rendered against him. It does not appear that W. M. West was served with notice, or that any action was taken against him in the case. The mortgaged property was sold under the decree, and of the amount realized the costs were paid, and the balance, two hundred and fourteen dollars and eighty-nine cents, credited on the judgment, and also upon the note, which the clerk had marked "Canceled" when said judgment was rendered. Plaintiff placed the note in suit in the hands of W. H. Rodwell, a notary public residing in Union, Iowa, to demand payment, and, if payment was not made, to protest the note, and give notice thereof; and Mr. Rodwell made certificate of protest, as follows:

"Be it known, that on the 17th day of February, in the year of our Lord eighteen hundred and ninety-six, at the request of H. C. Chapin, cashier of the Citizens' Bank of Union, holder of the original note, I, W. H. Rodwell, notary public in and for the county aforesaid, duly commissioned and qualified, and residing in Union, Iowa, in the county aforesaid, did, at the close of banking hours of said day, present the annexed note to Alexander's Meat Market, Munns West's former place of business, and at the Citizens' Bank, and demanded payment thereof, which was refused for want of funds of Munns West or W. M. West. Whereupon I, the said notary, at the request aforesaid, did protest, and by these presents do solemnly and publicly protest, as well against the makers and indorser of the said note as against all others whom it may or doth concern, for exchange or re-exchange, and all costs, charges, damages, and interest already incurred, and to be hereinafter incurred, for want of payment of the said note. And I do further certify that, on the same day and year above written, I gave notice to the makers and indorser of said note of the non-payment of the same, in writing and print, and put into the post office at Union, Iowa, postage prepaid, as follows, to-wit: A notice for Munns West, Union, Iowa; a notice for W. M. West, Union, Iowa; a notice for W. A. Haggin, Ferguson, Iowa; a notice for City National Bank, collectors,—each of the above-named places being the reputed places of residence of the persons to whom the notices were, respectively, directed.

"Fees, etc.:

| | | |
|---|---|---|
| Protest ............................................. | $ | 75 |
| Demand ............................................. | | 50 |
| Notices ............................................. | | 75 |
| Record ............................................. | | 50 |
| | | |
| Total ............................................... | $2 | 50 |

"In witness whereof I have hereunto subscribed my name and affixed my seal of office.

"W. H. Rodwell, Notary Public."

On the thirtieth day of July, 1897, plaintiff brought this action to recover the balance due upon said seven hundred and sixty-eight dollar note, with interest, from the defendant, as indorser.

II. "Grace shall be allowed upon negotiable bills or notes, payable within this state, according to the principles of the law merchant; and notice of non-acceptance or non-payment or both of such instruments shall be required according to the rules and principles of the common law." Code 1873, section 2092. "The general rule may be said to be that the drawers and indorsers of a bill and the indorsers of a note are dicharged from their liability, unless payment of the bill or note be demanded from the party previously bound by it on the date on which it falls due." 1 Parsons Contract (ed. 1868), p. 292. We first inquire when the note in suit became due. According to its face it fell due February 14, 1896; but defendant contends that because of the provision in the mortgage quoted above, and the bringing of said action to foreclose the mortgage, the entire indebtedness then became due, and that, as no demand or protest was then made or notice of protest given, he is released from liability on his indorsement. It is argued that the notes and mortgages are parts of the same transaction, that they must be construed together, and that, thus construed, the entire indebtedness became due on default of payment of the part due, and that, by bringing said action, the plaintiff elected to declare the whole debt due. Counsel say: "The law is well settled that, as between the parties to any two instruments executed contemporaneously, they will be construed together, as if they were one instrument, so far as the facts are concerned," and they argue as if W. M. West had joined in the mortgage. W. M. West did not join in the mortgage; therefore the rule does not apply to him. Nor did he in any way consent that the note in suit should become due at any other time than that expressed on its face. By this note the Wests obligated themselves to pay the amount thereof, "two years after date," to

the holder; and by this indorsement the defendant agreed that if, on demand then lawfully made, or endeavored to be made, they failed to pay, on due notice thereof he would pay the debt. Clearly, as to W. M. West, no other agreement was ever made than that expressed in the note, and it did not become due as to him until two years after its date. Whether, if Munns West was the only maker of the note, or if W. M. West had joined in the mortgage, the entire debt would have become due on default of partial payments due, so as to require demand, protest, and notice at that time to charge the indorser, we do not determine; as such is not the case before us. The Wests are joint makers of the note, and neither could change the obligation of the other. The mortgage was a mere incident to the debt, and its foreclosure was not prejudicial to the indorser. It was favorable to him, as it would have been if the holder of the note had proceeded by attachment before its maturity, and had recovered a part of the debt. If plaintiff had caused demand, protest, and notice of protest, at the time default was made on the partial payments, and thereon sought to have charged the defendant on his indorsements on this note, he might truthfully have answered that the debt is not due, and claimed the time which the note gave him. We conclude that, under the facts of this case, this note did not become due so as to charge the defendant as indorser until two years after its date.

III.   This note, though payable at Union, Iowa, is not made payable at any particular place. Therefore, to charge the defendant on his indorsement, the plaintiff must show that on one of the days of grace he caused demand of payment to be legally made upon the makers of the note, or facts which will excuse such demand; that payment was not made; and that notice thereof was duly given to the makers and indorsers of the note. Defendant insists that the formalities necessary to make a legal protest were not observed. The notary's certificate shows that demand was made "to Alexander's Meat Market, Munns West's former place of business, and at the Citizens' Bank;" but, as the note

was not payable at either place, these demands were insufficient. There was no demand made upon either of the makers of the note, and the contention is whether sufficient facts are shown to excuse the plaintiff from causing such demand to be made. Defendant's counsel quote from Tiedeman Commercial Paper, section 314, as follows: "If the place of business cannot be found, or the maker or acceptor has no place for the transaction of financial matters, demand must be made at the residence; and, where the place of business has been abandoned, it will not be enough to make presentation at the old place of business. If the holder does not know where to find the maker or acceptor, he must make the most diligent inquiry before dishonoring the paper by protest for nonpayment; and he must pursue the inquiry as long as he does not obtain some definite information as to the whereabouts of the maker or acceptor.". Mr. Rodwell, to whom the making of demand was intrusted, testifies that he had resided in Union for twenty-two or twenty-three years; that he knew the Wests; that he understood that they had formerly been in business in that meat market, but that he did not know where their place of business or residence was when he made the protest. He made no inquiry whatever as to their whereabouts, but assumed that it was sufficient that he make demand at said market and bank. It is quite probable that inquiry would have disclosed to him the place of business and residence of these parties, but he made none, and for aught that appears, they were then residents of Union. Surely, there was not such diligence exercised as will excuse the making of demand, and therefore the judgment is REVERSED.