BIRKEN v. HICKEY et al.

BIRKEN, Respondent, v. HICKEY et al.

BIRKEN, Respondent, v. KILBER et al.

BIRKEN, Respondent, v. NEHLICH et al.

BIRKEN, Respondent, v. VALLEY BEND LAND & CATTLE COMPANY.

BIRKEN, Respondent, v. WALLACE et al.

BIRKEN, Respondent, v. WEISENBURGER et al.

DIRKS TRUST & TITLE COMPANY et al (Appellants in all cases).

VALLEY BEND LAND & CATTLE COMPANY, Appellant in No. 4521.

(176 N. W. 137.)

(File Nos. 4517-4523.   Opinion filed January 30, 1920.)

1.  Foreclosure—Fraud—Fictitious Note and Mortgage—Suit by Indorsee Before Apparent Maturity Against Maker and Indorser, Guarantor—Allegation That "Debt Incurred for Property Obtained Under False Pretenses, "Not as Cause of Action—Statute—Whether "Equitable Action to Foreclose"—Suit Nonsustainable—Premature Suit, Defendant's Plea Of, Futile.

Plaintiff, to whom the spurious notes and mortgages in question were transferred by the holder for the sole purpose of having him bring suit thereon, brought a separate action on each note and mortgage before their apparent maturity, against the appellant makers and also against the payee-indorsor and one T., a stockholder of the payee corporation; the complaint alleging (but not as part of cause of action) that debt sued for was incurred for property obtained under false pretenses (Sec. 2451 Rev. Code 1919) by the payee; the complaint in each action disclosing that plaintiff knew when suits were commenced that at least part of the papers were forgery, and that, as to the others, the securities did not exist; but the actions are not based upon the alleged fraud or upon the indorser's warranty that the papers were not spurious, the actions being ordinary ones for foreclosure of the chattel mortgages as though same were valid existing securities subject to foreclosure; seeking also to hold the payee-indorser and also T as guarantor, this on the ground that the suits were primarily equitable actions to foreclose, the relief re personal judgments being claimed as incident to the equitable relief, upon which claim trial court overruled defendants' motions for jury trials; the complaints containing no allegations as to provisions of the mortgages.  Held, that the suits were prematurely brought; that notwithstanding judgments were rend-

ered in favor of plaintiff, yet plaintiff cannot be heard to contend that the actions were not prematurely brought and to base such contention upon the claim that, because of the fictitious and fraudulent character of the papers, the liability of the payee-indorser accrued when the money was obtained.

2. **Same—Fraud—Possible Potential Actions Maintainable, Designated.**

Held, further, that upon the facts known at commencement of suit, the notes being negotiable in form, plaintiff could have sued thereon as for a liability which accrued when the money was obtained from the M. Co., purchaser of the paper from the payee-indorser; that he could have sued upon the paper he knew to be spurious, for damages based upon breach of indorser's warranties that the papers were not spurious, and could, as to all the notes, have sued the payee-indorser for money had and received, or for damages for deceit, in any of which actions T, guarantor of the notes, could have been made a party defendant, but the apparent makers of the notes would not have been proper parties without allegations that they were parties to the fraud; all of which potential actions would have been at law; that in all such potential actions, except those based upon the warranties, the alleged frauds would have been an essential to the causes of actions; which potential actions would have lain at once upon discovery of the facts and regardless of the due dates of the notes involved.

3. **Same—Wrongful Rejection of Pleas of Premature Actions, Plaintiff's Right, After Trial, To Affirm Court's Action Re Insecurity Clause in Mortgage Security — No Findings Re Insecurity Clause, Effect.**

Nor can plaintiff, after trial below, contend that defendants' pleas that actions were prematurely brought were rightfully rejected, upon ground that mortgagee could, under the insecurity clause, declare the debt due. So held, where complainants did not allege mortgage provisions, but did virtually confess, by attempt to avoid effect of fact, that debts were not due, there being no findings of any such provisions in the mortgages; and notwithstanding plaintiff in several actions plead existence of such mortgage provisions, and exercise of options thereunder.

4. **Appeals—Error—Judgment, Facts Supporting, But Erroneous Decision, Whether Judgment Sustainable on Appeal Notwithstanding Actions Premature—Effect, Under Different Disposition Re Appeal.**

Under the well-established practice in this jurisdiction, of sustaining a judgment the record as a whole shows to be supported by facts, even though trial court may have erred in grounds of decision, held, that while such rule would not war-

rant sustaining judgment rendered in an action prematurely
brought—such fact having been pleaded—yet, if from whole
record it appears it was not prematurely brought, Supreme
Court will not reverse upon dilatory plea merely because of
want of necessary finding, or of defect in pleading, the facts
being indisputable; that if trial court upon request had al-
lowed amendments of complaints to conform to proof, so as
to allege insecurity clauses in mortgages followed by corres-
ponding findings, it would not have abused discretion, hence,
if reversals solely uponf ailure of trial court to sustain such
pleas in abatement without consideration of such mortgage pro-
visions, might result in amendments of pleadings and. making
of further findings, and the bringing of the causes to Supreme
Court, upon new appeal, leaving undetermined question of pre-
mature suits, thus further delaying final determinations,.
Supreme Court will (the mortgage having been in evidence)
consider respondent's contention that, because of such mortgage
provisions, the secured notes were due when suits were brought.

5.　Pleadings—Plea in Abatemen, Disfavored.

　· A plea that an action was prematurely brought is a plea in
abatement—a dilatory plea—one looked on with disfavor.

6.　Negotiable Instruments—Notes and Chattel Mortgages, Joint
　　Interpretation—Negotiability as Affected By Insecurity Clause,
　　Non-reference to Mortgage in Note, Effect—All Contingencies
　　Considered, Rule of Interpretation Re.

　　While two writings executed as part of one contract should
be construed together, yet, in determining intent of parties
to . promissory notes secured by chattel mortgages ˙executed as
part of the contract, held, that unless the note specifically
refers to the insecurity clause in the mortgage, thus rendering
the note non-negotiable, such provision of the mortgage does
not affect the note.　In construing the two writings, courts are
bound to consider all contingencies that might arise, not merely
the particular facts in cases at bar; should consider the effect
where there are a series of notes, some not maturing until
years in future, also the extent and nature of liability thereon,　·
of an indorser, and whether he, not having waived his right
to notice of non-payment, must be notified of the fact that
each serial note has matured and been dishonored, in order
to hold him as indorser; also the statute of limitations, and
when it has run as to all serial notes secured by mortgage, as
soon as the insecurity provision is broken, thus, perhaps, bar-
ring suit upon one or more such notes when by its terms they
are not yet due; also the parties' rights when the notes have
passed to different holders, and whether they, though ignorant
of the event which matured the notes, have lost their rights by
failure to protest; also their right under failure to pay interest,

taxes, insurance, and the effect re statute of limitations. The proper rule re parties' intent, should hold that they intended notes to be negotiable instruments—and did not intend, because of the mortgages, to destroy negotiability, but intended merely to give payee or indorsees the right to immediately realize on the security upon happening of any event covered by mortgage provisions, leaving, however, all personal liability to be determined on provisions of the notes; that if a contrary construction were adopted the mortgage provisions would extinguish terms of the note; as well might stipulations of the note extend those of the mortgage; the stipulations in the latter should be construed as providing a remedy on the mortgage, the obligations on the notes being determined by their own expressed terms, thus both contracts may stand. So held, where the notes contained no reference to the mortgage insecurity provision, but where, as to part of them, one of the indorsers did not become such for transfer, while in one case, it did become such indorser and where the note recited it was secured by chattel mortgage. In so holding, Court concedes, without deciding, that the liability of an indorser of non-negotiable paper, is the same as that of an indorser of negotiable paper.

**7.  Actions—Debt Incurred "For Property Obtained Under False Pretenses"—Statute—Pleadings,  Proofs,  Attachment  Procedure, As Essential to Action.**

Under Sec. 2451, Rev. Code 1919, providing that when the debt was incurred for property obtained under false pretenses a creditor may sue before claim is due and have attachment against debtor's property, held, that to maintain suit thereunder, complaint must allege facts warranting bringing of suit before debt due, which facts must be sustained on trial; also an attachment must have been laid, and sustained when challenged; and where plaintiff in several suits failed to issue attachments under said section, and in several others the attachments were wrongfully sustained, the suits were wrongfully prosecuted and should be dismissed. Held, further, that the purpose of said section was to provide means whereby a creditor, whose debtor had been guilty of any frauds therein named, might protect himself immediately after discovery of the fraud by getting debtor's property into court's custody, to secure eventual judgment; which attachment, being merely provisional remedy, must accompany or follow, but never precede, issuance of summons; the purpose of said section was not to allow the idle act of bringing suit before debt matures, but to furnish means for instant attachment.

**8.  Attachment—Suits Against Indorser on Forged Paper and Mortgage—Attachment for Incurring Debt By False Pretenses—**

·Affidavit Alleging Forgery to Knowledge of First Indorser
and Fraudulent Transfer to Second—Vacating Traversing Af-
fidavit, Failure to Allege Payee's Knowledge of Forgery of
Non-existent Mortgage Security, Effect.

Where, in suits upon promissory notes secured by chattel
mortgages, against the payee-indorser and its indorsee, attach-
ments were issued under Sec. 2451, Rev. Code 1919, providing
that when debt was incurred and property obtained under false
pretenses creditor may sue before claim is due. and ʼhave attach-
ment against debtor's property, upon ground that the papers
were forged, that first indorsee knew of its character and that
it fraudulently induced second indorsee to purchase same; the
affidavit supporting motion to vacate, traversing said charges;
plaintiff, opposing the motion to vacate it, having produced
an affidavit of the second indorser which failed to allege facts
sustaining inferences that payee-indorser was aware that the
notes were spurious or that the mortgaged property was non-
existent, but did allege that the fraud was "the representation
of genuineness (of the notes) evidenced by said indorsements of
the" payee-indorser, and "the recitals contained in 'said mort-
gage" that mortgagor was owner of the chattel ˙ security.
Held, that these facts failed to support charge of ʼfalse pre-
tense, but contrariwise were proof that payee believed the
paper to be genuine; that by indorsing the note payee war-
ranted its genuineness, which act raises no inference that payee
knew of the forgery, since mortgage recitals may well have
been relied upon by payee; and the attachments should have
been dissolved.

9. Foreclosure—Suit Before Maturity—Forged Note and Mortgage—
Pleading, Finding of Non-existence of Chattel Security—Fur-
ther Realty Security, No Pleading, Finding, Authorizing Fore-
closure Before Maturity or Non-performance of Covenants,
Whether Foreclosure Justified.

Where, in a suit upon a note and chattel mortgage, alleged
to have been forged, and upon a realty mortgage as further
security, plaintiff alleged that the debt was incurred for prop-
erty obtained by false pretenses in that security had no exis-
tence, which allegation was the basis of a decree without
chattel foreclosure; decree having been based upon the realty
mortgage; held, in absence of plea or finding that the realty
mortgage authorized foreclosure before maturity of note, and
of finding or evidence of non-performance of any covenants
under which, for non-performance, foreclosure was authorized,
plaintiff was not entitled to any relief sought, either legal or
equitable, and the plea of preamture suit should have been
sustained.

Appeal from Circuit Court, Lyman County.   Hon. WILLIAM WILLIAMSON, Judge.

Separate actions brought by William J. Birkin, Jr., against Ray W. Hickey, Dirks Trust & Title Company, William R. Tapper, and Guy Kelley as administrator of the estate of Peter B. Dirks, deceased (No. 4517); against Roy F. Hickey et al. (No. 4518); against Phillip Kilber et al. (No. 4519); against Johann Nehlich et al. (No. 4520); against Valley Bend Land & Cattle Company et al. (No. 4521); against Floyd M. Wallace et al. (No. 4522); and against Adam Weisenburger et al. (No. 4523). From separate judgments in favor of plaintiff, and from corresponding orders denying new trials, Dirks Trust & Title Company, and William R. Tappen, appeal in all cases, Valley Bend Land & Cattle Company appeal in case No. 4521. Judgments and orders reversed, with directions.

*Brown & Brown,* for Appellants.

*Wagner & Danforth,* for Respondents.

To point one of the opinion, Appellants cited: Craigo v. Craigo, 22 S. D. 417, 118 N. W. 712; Anderson v. Chilson, 8 S. D. 64, 65 N. W. 435; Leisch v. Baer, 24 S. D. 184, 123 N. W. 719; Northern State Bank v. Bellamy (N. D.), 125 N. W. 888.

Respondent cited: Western Twine Co. v. Scott, 11 S. D. 27.

To point four, Respondent cited:  Green Bay Lumber Co. v. Miller (Ia.), 62 N. W. 472; Jaeckel v. Peas (Idaho), 53 Pac. 399; Becker v. Superior Court (Calif.), 90 Pac. 689.

(7)  To point seven, Appellants cited:  6 C. J. 84, § 114, and cases cited in notes; Gowan v. Hanson, 55 Wis. 341, 13 N. W. 238; Streissguth v. Reigelman (Wis.), 43 N. W. 1116; 6 C. J. 84, note 41 (a); Keeler v. Parks (Wash.), 130 Pac. 111; Scott v. Neeley, 140 U. S. 106, 11 S. Ct. 712.

WHITING, J.  One Peter B. Dirks was the managing officer of the Dirks Trust & Title Company, hereinafter denominated the Title Company, of which corporation one William R. Tapper, a resident of Chicago, was also a stockholder.  Among the enterprises in which Dirks was engaged was the loaning of money on notes secured by chattel mortgages on cattle and horses—such notes and mortgages being commonly spoken of as "cattle paper."  His custom was to take such paper, either in his own name as payee or in that of the Title Company, and then sell

same to loan companies or capitalists. Among parties to whom he thus transferred this class of paper was the McNish Cattle and Loan Company of Omaha, Neb., hereinafter denominated the McNish Company. In transferring paper to the McNish Company, if the paper ran to himself as payee, he added to his own indorsement that of the Title Company. In September, 1916, Dirks died. At this time the McNish Company was holding at least seven of the cattle papers, which it had purchased of Dirks or of the Title Company through Dirks, all of which paper bore the indorsement of the Title Company. The McNish Company transferred these seven papers to William J. Birken, for the sole purpose of having him bring suit thereon for its benefit. Birken brought a separate action on each paper, naming as defendants the apparent maker of the note and also the Title Company and Tapper; and seeking, not only a foreclosure of the mortgage, but personal judgments against each of the de-fendants. He sought to hold the Title Company as indorser and Tapper as a guarantor, under a written guaranty, of the payment of all obligations due from the Title Company to the McNish Company. Later the administrator of Dirks' estate was made a party defendant in each case, but this fact is immaterial to any question necessarily determined upon this appeal. Trials were had to the court without a jury. Judgments were for plaintiff against all the defendants, and from such judgment, and from orders denying new trials, appeals were taken by the Title Company and Tapper. These appeals have been submitted upon one set of briefs; such briefs noting wherein the facts of any one case are claimed to be different from those of any one or more of the others. There being dispute between the parties as to some of the facts, we have consulted the settled records and relied upon same for the true facts.

Appellants contend that the actions were prematurely brought. Respondent, in his brief, says:

"The actions were not prematurely brought because: First, the note and mortgage in each case was fictitious and fraudulent, and the liability accrued when the money was obtained; second, each mortgage authorized the holder to declare the debt due when he deemed himself insecure, and the commencement of the suits was a declaration that the amounts claimed in each

case were due; and, third, under the allegations of the complaints and affidavits, the plaintiff was entitled to maintain the suits before the apparent maturity of the debt, on the ground that in each case the debt was incurred for property obtained under false pretenses."

It is true that each action was brought before the apparent maturiy of the note sued on, it being alleged that the debt sued for "was incurred for property obtained under false pretenses" by the Title Company, and the pleadings set forth the facts supporting this allegation of "false pretenses." From a reading of the complaints, it is clear that the above allegation was not inserted for the purpose of pleading an essential element of the causes of action sought to be pleaded. Respondent states in his brief that:

"While the notes and mortgages appeared valid upon their face, and certified copies of the original mortgages on file in the register's office accompany each note, the McNish Company acquired nothing for the money it paid Dirks, except the indorsement of the Dirks Trust & Title Company and the guaranty of Dirks and Tapper."

[1, 2] The complaints show that respondent knew the above facts at the time he started these actions—he knew that at least part of the papers were forgeries, and that, as to the others, the security named in the mortgages did not exist. As a fact, as developed on the trial and as admitted by respondent in its brief, all the papers, except perhaps that given by the Valley Bend Land & Cattle Company, were spurious. Upon the facts known at the time of commencing these actions, the notes being negotiable in form, respondent could have sued for a liability which "accrued when the money was obtained" from the McNish Company. He could, in those matters wherein he then knew the paper to be spurious, have brought actions for damages based upon the breach of the indorser's warranties that the papers were not spurious. He could, as to all the notes, have sued the Title Company for money had and received, or for damages for deceit. In any of such actions, Tapper could have been made a party owing to his guaranty, but the apparent makers of the notes would not have been proper parties without allegations that they were parties to the fraud. Actions such

as noted above would have been at law, and the defendants therein would have been entitled to jury trials. In such actions, except those based upon the warranties, the alleged fraud would have been an essential to the causes of action. Any one of the actions mentioned would lie at once upon the discovery of the facts and regardless of the due date of the note involved. But respondent did not see fit to bring actions based upon the alleged fraud or upon the warranties—he brought the ordinary actions for foreclosure of the chattel mortgages exactly as though he believed all the papers to be valid, and that there was in existence security subject to foreclosure. In these actions he has sought to join the Title Company and hold it on the ordinary liability of an indorser. He has also sought to hold Tapper on his guaranty. He claims the right to join the Title Company and Tapper on the ground that, though these are primarily equitable actions to foreclose chattel mortgages, the court, as a court of equity, has jurisdiction to adjudicate fully upon the liability of the several parties even though such liability may be legal as distinguished from equitable. It is because of the claimed equitable nature of the actions that respondent objects to, and succeeded in having the trial court overrule, appellants' motions for jury trials. It is thus clear that the relief, by way of personal judgments against the Title Company and Tapper, was claimed as an incident to the equitable relief sought, and that the only reason for respondent's allegations pertaining to the false pretenses was, not to set forth a necessary element of the cause of action against some one or more of the parties thereto—it is perfectly apparent that it was not necessary for that purpose—but to plead facts showing a right to bring the actions before the debts sued on were due, thus complying with the provisions of section 2451, Rev. Code 1919, and the holding of this court in Twine Co. v. Scott, 11 S. D. 27, 75 N. W. 273. Section 2451 provides that:

"When the debt was incurred for property obtained under false pretenses" "a creditor may bring action on a claim before it is due and have attachment against the property of the debtor. * * *"

Respondent, therefore, cannot now be heard to contend that the actions were not prematurely brought and to base such

contention upon the claim that, because of the fictitious and fraudulent character of the papers, the liability of the Title Company accrued when the money was obtained.

[3]  Neither is respondent in a good position to contend that appellants' pleas that the actions were prematurely brought, were rightfully rejected, and to base such contention upon the alleged fact that "each mortgage authorized the holder to declare the debt due when he deemed himself insecure." As regards three of the cases, this contention is clearly an afterthought—it never occurred to respondent to make such claim until after the trial in the circuit court. This is evidenced by the complaints themselves, which contained no allegations as to the provisions of the mortgages, and contained, as above noted, allegations which virtually confessed, but attempted to avoid the effect of,, the fact that the debts were not due. Moreover, in not one of the seven cases do the findings of the trial court advise us that there are any such provisions in the mortgages—the findings are insufficient to support the judgments if respondent must rely upon the provisions which he now refers to. It is true, however, that in four cases respondent pleaded the existence of such provisions in the mortgages, and in three of the cases pleaded an exercise of the options thereunder.

[4, 5]  The well-established practice in this jurisdiction is to sustain a judgment, which the record as a whole shows to be supported by the facts, even though the trial court may have erred in the grounds for its decision. While such rule would not warrant us in sustaining a judgment rendered in an action prematurely brought—such fact having been pleaded—yet, if from the whole record it appears that it was not prematurely brought, we should not reverse it upon a dilatory plea merely because of the want of a necessary finding or of defect in pleading, where the facts are beyond dispute. A plea that an action was prematurely brought is a plea in abatement—a dilatory plea—one that is looked on with disfavor. 21 R. C. L. 539. We think there would have been no abuse of discretion on the part of the trial court if, upon request so to do, it had allowed the complaints to have been amended to conform to proof—thus in all the cases alleging the provisions of the mort-

gage—and if it had then made findings as to such provisions. It follows that reversals based solely upon the failure of the trial court to sustain such pleas in abatement, if entered without a consideration of, and reference to, these mortgage provisions, might possibly result in the amending of the pleadings, the making of further findings and the bringing of these causes to this court upon a new appeal with the question still open as to whether the actions were prematurely brought, thus further delaying any determinations as to plaintiff's rights. We have therefore concluded, inasmuch as the mortgages were in evidence and their provisions beyond dispute, to consider the contention of respondent that, because of such provisions, the notes were due when the suits were brought.

The notes are by their terms negotiable. Not one suggests that the mortgage accompanying it contains any provision that might accelerate its maturity. Four in no manner refer to the accompanying mortgages. In four, Dirks is named as payee, and it therefore appears that on these the Title Company did not become an indorser for transfer. Four did not contain the provisions relied upon by respondent—the provisions therein being materially different. The cases in which the mortgages contain the provision most favorable to respondent's position, being cases based on notes in which the Title Company appears as payee, and therefore as indorser for transfer, and in which there are references to the fact that they are secured by a chattel mortgage, are the cases based on paper of the Valley Bend Land & Cattle Company and of one Nehlich. In these mortgages are to be found a provision that when—

"the second party shall deem itself insecure, then the whole of said indebtedness hereby secured shall, at the option of the legal holder or holders of said note, become due and payable at once without notice, and * * * it shall be lawful for the second party * * * to take possession [of the property] * * * and to dispose of same by sale in manner provided by law. * * *"

It is clear that, unless respondent's contention as to the effect of the provision in this mortgage is good, we need not consider the other notes and mortgages.

[6] While courts all agree that two writings executed as a part of one and the same contract should be construed

together, yet, in trying to determine the intent of the parties—a matter confessedly controlling in the construction of contracts—they are in irreconcilable conflict as to whether a provision in a mortgage, such as that above quoted, may affect the apparent maturity of the note, or whether it merely provides a condition under which there may be an earlier enforcement of the mortgagee's rights under the mortgage. 3 R. C. L., § 436, p. 1215; 8 C. J. 199.

. We are satisfied that the better reasoning supports the holding that, unless the note specifically refers to the provision in the mortgage and to its terms, thus clearly rendering the note non-negotiable, the provision of the mortgage should not be held to affect the note. To hold otherwise disregards the clear intent of the parties to give and to receive a negotiable note. If we hold the terms of the notes before us to be modified by this provision in these mortgages, by so doing we render the notes non-negotiable. This provision and many similar that are found in mortgages are not always subject to the exercise of an option by the holder of the note, but frequently are absolute in terms. Mortgages containing such provisions often secure a series of notes some perhaps by their terms not due until years in the future. If a provision in a mortgage renders the maturity of the accompanying note uncertain, and thus renders the note non-negotiable, such note must have all the incidents of a non-negotiable note; at least as between the parties to the note and those who take same with notice of the mortgage and its provisions. If the notes before us are non-negotiable, what is the extent and the nature of the liability of the Title Company? On this the courts are in hopeless conflict. But conceding, though not deciding, that the liability of an indorser of non-negotiable paper is the same as that of an indorser of negotiable paper, yet other important questions present themselves. If the provision in a mortgage, whether absolutely or through the exercise of some option, matures the notes and there be a series of notes secured by such mortgage, must an indorser of these notes, who has not waived his right to notice of non-payment, be notified of the fact that every one of the notes have been matured and dishonored, in order to hold him as indorser, and this regardless of the fact that the due dates

named in some of the notes may be years in the future? What of the statute of limitations? Does it begin to run as to all notes secured by the mortgage as soon as such a provision is broken, thus, perhaps, barring suit upon one or more of a series of notes when such note or notes, by their terms, are not yet due? These questions become still more complicated when we contemplate a series of notes that have passed into different hands, and where, without the knowledge of the owner or owners of one or more notes of the series, such a provision in the mortgage has been broken, and the option, if one is given, has been exercised by the holder of another note. What about the rights of the other holders as against indorsers? Do they lose all rights because, in ignorance of the event which matured all the notes, they have failed to protest their notes? If such a provision is broken through the failure to pay interest, taxes, or insurance, and the holder of the first note of a series declares the provision effective, and his note due before it would otherwise be due, does such act on his part start running the statute of limitations as against all the holders of other notes of such series, so that, perchance, the holder of the last note of the series awakes some day to learn that his note is outlawed when, on its face, it is not due for several years? In determining the proper construction to be given to contracts such as those before us, we are bound to consider all contingencies that might arise, and not merely the particular facts in the cases before us. We believe that it conforms to the real intent of parties to such notes and mortgages, and prevents the possible happening of contingencies not contemplated by them, to hold that they intend the notes to be negotiable instruments— that they do not intend, by the giving and taking of mortgages, to destroy such negotiability, but intend merely to give to the payee or his indorsees the right to realize on the security at once upon the happenings of any of the events covered by the provisions of such mortgages, leaving, however, all personal liability to be determined on the provisions of the notes. The Iowa court has held in several cases that, where a mortgage contains such a provision as the one before us, and such provision comes into force, it will render the note due. Such decisions placed that court in a peculiar position when, in Trease

v. Haggin, 107 Iowa 458, 78 N. W. 58, it had before it a case where two notes were given to one payee, each executed by two makers, and the notes due upon different dates. One maker gave a mortgage securing both notes, and such mortgage contained a provision like the one we are considering. The payee transferred the notes by indorsement. The provision of the mortgage coming into force, the holder of the notes proceeded to foreclose the notes and mortgages. On the foreclosure proceedings, the first note and a part of the second were paid. The holder then waited until the apparent maturity of the second note, when he protested such note and brought suit against the indorser. Such indorser claimed that the provision matured the note at time of foreclosure; that he was not given the notice of non-payment to which he was entitled as indorser; and that he was released of any liability. Under its holdings in other cases, the court was bound to hold that the notes matured upon the happening of the event named in the morgage provision, yet it allowed the peculiar facts of that particular case to control, and ruled that the second note was not matured until the due date thereof. We think it wise to adopt a rule that gives rise to no such inconsistent results. Among the cases that support our views are McClelland v. Bishop, 42 Ohio St. 113; White v. Miller, 52 Minn. 367, 54 N. W. 736, 19 L. R. A. 673, and Owings v. McKenzie, 133 Mo. 323, 33 S. W. 802, 40 L. R. A. 154. In the Ohio case an indorser, sued as such, was defending upon the ground that a mortgage provision, such as we have been considering, had matured the note three years prior to its apparent maturity. Among other things, the court said:

"While it is true that all separate writings, made at the same time, and relating to the same transaction, are, in the eye of the law, as if embodied in one, yet it is not true that when, in one contract, evidenced by a single paper, or in several, relating to the same transaction, containing stipulations relating to matters in their nature separate, either should be construed so as to extinguish the other. If the construction claimed for the mortgage be given, it would extinguish the terms of the notes. As well might the stipulations of the note extinguish those in the mortgage. The stipulation in the mortgage should be construed as providing a remedy on the mortgage, and that, so far

as foreclosure proceedings are concerned, the notes for that purpose are due, but for general purposes the obligations on the notes are to be determined by their own expressed terms. In this way both contracts can stand and be fully enforced according to the manifest intention of the parties."

We will not extend this portion of our opinion by quoting from the opinions in the other cases cited, but we commend the reasoning to be found therein—they are well worthy of careful study; this is especially true of the Minnesota case. The notes in suit in the actions now before us had not matured when suits were commenced.

[7] Can the actions be sustained because of section 2451, supra? To sustain same there must not only be complaints alleging facts warranting the bringing of the actions before the debts were due (Twine Co. v. Scott, supra), and, upon trial, proof of such facts (Cox v. Dawson, 2 Wash. 381, 26 Pac. 973) ; but there must be proper procedure under section 2451 ; and such procedure, if challenged, must be properly sustained. It becomes unnecessary for us to pass upon the sufficiency of the complaint or proof, as we are satisfied that respondent, in five of the cases, did not take one of the steps necessary to support an action brought under section 2451, in that he did not issue any attachments against any defendant, basing his right to same on a ground named in said section; and we are satisfied that the attachments issued in the other two cases were wrongfully sustained when challenged by motions to vacate. What is the clear purpose of the enactment of section 2451? It was to provide a means whereby a creditor, when his debtor had been guilty of any of the frauds therein named, might protect himself against such debtor by getting his property into the custody of an officer of the court, to be by him held to secure such judgment as might eventually be rendered. This desired result could be achieved by allowing an attachment to be issued as soon as the fraud was discovered. But an attachment is a mere provisional remedy; it must accompany or follow, but never precede, the issuance of the summons. Section 2451 was enacted, not to allow of the bringing of an action before debt is due—that alone would be an idle act, as judgment must await maturity of debt; the early bringing of the action is but a means

to the end, a means by which an opportunity is given for an attachment. If there is no attachment, or the attachment falls, the action falls. As stated in Streissguth v. Reigelman, 75 Wis. 212, 43 N. W. 1116:

"In an action brought upon a demand not due, a valid attachment is essential to the maintenance of the action. Failing the attachment, the action necessarily abates."

[8] The only party against which any attachment was issued upon a ground named in said section 2451 is the Title Company. The record shows attachments so issued in but two cases. The Title Company moved the vacation of these attachments. Such motions were denied, and the ruling thereon assigned as error. In one case the affidavit for attachment alleged the forged character of the paper; that the Title Company, through Dirks, knew of its character, and that it fraudulently induced the McNish Company to purchase same. The affidavit submitted in support of the motion to vacate traversed the above charges. No further affidavit or other evidence appears in the settled record as submitted in support of the attachment. The order refusing to vacate the attachment refers to an affidavit of McNish, and it would appear, from the briefs, that an affidavit similar to that of McNish submitted in the other case was submitted in this one. Respondent, in opposition to the motion to vacate the other attachment issued against the Title Company and to support the burden of proof that was cast upon it by the moving affidavit, presented the affidavit of McNish, the president of the McNish Company. This affidavit wholly failed to set forth any facts from which it could be inferred that Dirks, or any other person connected with the Title Company, was aware that the note was spurious, or that the mortgaged property had no existence—the two facts upon which the charge of false pretense was based. The affidavit alleged that—

The fraud was "the representation of genuineness [of the note] evidenced by said indorsement of the * * * Title Company by Peter B. Dirks," and "the recitals contained in said mortgage, to the effect that the said * * * was the owner of all the cattle described in said note [mortgage]."

These facts, instead of furnishing proof to support the charge of false pretense—proof that Dirks knew the true facts—

were strong proof that Dirks believed the paper to be all right. By indorsing the note, the Title Company, through Dirks, warranted its genuineness. Certainly from this act, followed by this consequence, no inference could be drawn that Dirks knew the note to be forged. The very "recitals contained in the mortgage," which the president of the McNish Company alleged were relied upon by him, may well have been relied upon by Dirks. There was absolutely nothing else submitted to the court in opposition to these motions to vacate the attachments—not one syllable of testimony to show that Dirks was advivsed of any fact that should have led him to even suspect the papers to be spurious and the property to have no existence. The motions to vacate such attachments should have been sustained. Wyman v. Wilmarth, 1 S. D. 172, 46 N. W. 190; Noyes v. Lane, 1 S. D. 125, 45 N. W. 327; Wilcox v. Smith, 4 S. D. 125, 55 N. W. 1107; Finch v. Armstrong, 9 S. D. 255, 68 N. W. 740. With the attachments vacated, the actions, as against the Title Company, would have abated. When the actions failed as against the Title Company they must of necessity have failed as against Tapper. The actions were all prematurely brought against the Title Company and Tapper, and must be dismissed as against them.

[9] In the action wherein the Valley Bend Land & Cattle Company was made defendant, judgment was entered against that corporation, and it also has appealed. It also pleaded that the action was prematurely brought, and all we have said above upon that question applies to the personal relief sought against this appellant. But equitable relief by foreclosure was sought against this defendant. Respondent alleged, in support of his charge of false pretenses, that the property, described in the chattel mortgage given by this appellant, had no exisence in fact. The court found this allegation to be true, and therefore did not decree any foreclosure of the chattel mortgage. Respondent alleged the giving, by this appellant, of a real estate mortgage in security of the note sued on in this particular action. The court found such a mortgage to have been given, and decreed its foreclosure. There was, however, no plea or finding that the real estate mortgage contained any provision authorizing foreclosure before maturity of note. Furthermore,

while the mortgage contains a provision allowing foreclosure in case of non-performance of certain covenants, there was neither finding nor evidence of any non-performance of such covenants. It follows that respondent was not, at the time of bringing of this action, entitled to any of the relief sought—either legal or equitable—and this appellant's plea that the action was prematurely brought should have been sustained.

As these actions must all be dismissed, and the new actions, if any, which may be instituted, may not present many of the numerous questions of both law and fact, relating to the legal rights of the parties, that are discussed in the briefs on these appeals, · we do not feel called upon to pass upon same at this time. What we have just said applies even to the trial court's alleged errors in not sustaining motions for change of trial judges. While the record on such motions presents a close question as to the correctness of the trial court's rulings thereon, we do not feel called upon to pass thereon, as we deem it improbable that such question will again be presented in any action that may be based on this same paper.

The judgments and orders are reversed with directions to the trial court to dismiss all of said actions as against these appellants.