# CHARLESTON.

## McGUIRE v. OLD SWEET SPRINGS Co.

Submitted November 19, 1913.    Decided December 2, 1913.

1. APPEAL AND ERROR—*Records—Deposition—Want of Service.*

    Apparent want of service of a notice to take a deposition read on the trial in the court below over a general objection will not be regarded on writ of error here when it is made to appear from a corrected record certified from the lower court that notice thereof was in fact duly accepted by counsel. (p. 324).

2. MASTER AND SERVANT—*Employment—Fabricated Contract—Sufficiency of Evidence.*

    The evidence in this case is not sufficient to overcome the verdict of the jury against defendant's theory that the contract sued on was a fabricated contract. (p. 324).

3. CORPORATIONS—*Officers—Term of Office—Workmen.*

    Section 53, chapter 53, Code 1906, relating to corporations providing that, "The officers and agents so appointed shall hold their places during the pleasure of the board", does not apply to persons employed to perform work, such as carpenter work, and who are in no way to act in a representative capacity. (p. 328.)

4. SAME—*General Manager—Authority—Contract—Validity.*

    There is no apparent authority in the general manager of a corporation operating a summer hotel, due to the nature of his office, to make unusual, extraordinary or unnecessary contracts for labor, such as carpenter work, extending beyond the term of his own employment, but when with specific direction of the president, or there is no abuse of such authority and no fraud or imposition practiced in making such contract, it is not necessarily void. (p. 327).

5. SAME.

    A proposal in writing by such corporation operating such hotel through such general manager, to a mechanic, to furnish him carpenter work, at a definite price per day, and for a definite time,

running for a short time into another season and beyond the term of such general manager, when duly accepted and the work entered upon, is not void for want of authority express or implied on the part of such general manager to make the contract, and as being an unusual, extraordinary or unnecessary contract. (p. 328).

6. CONTRACTS—*Mutuality—Work and Labor.*

Nor is such a contract or proposal, when so accepted, void for want of mutuality of obligation on the part of the contracting parties. (p. 329).

Error to Circuit Court, Monroe County.

Action by W. J. McGuire against the Old Sweet Springs Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Brown, Jackson & Knight,* and *O. P. Fitzgerald,* for plaintiff in error.

*T. N. Read,* and *J. H. Crosier,* for defendant in error.

MILLER, JUDGE:

In assumpsit plaintiff recovered a verdict and judgment for $387.00, on the following contract declared on: "September 15, 1908. Mr. Wm. McGuire contract with Old Sweet Springs Hotel Co.    *    *    *    *    Old Sweet Springs Hotel Co. agrees to furnish carpenter work for Wm. McGuire from above date to June 1-09 at Rate of 2.50 per day, McGuire to board himself, the Company to furnish 6 Rooms in Blery Cottage free of rent also to furnish all cord wood required between dates mentioned. Company also agrees to employ McGuire's Son (U. McG.) as Carpenter at least two (2) days a week at $2.00 per Day between dates mentioned, he to board himself. Signed, Old Sweet Springs Hotel Co. (R.)''.

It is substantially averred in the declaration, that in consideration of the agreement and promises contained in said contract, plaintiff with his said son, a minor, on September 15, 1908, did move upon the premises of defendant, and into said cottage, and then and there began the discharge of their duties under the contract, and that defendant, well knowing and understanding the terms and effect thereof, did then and there recognize, approve and ratify the same, and did then and there furnish plaintiff and his said son, the cottage, cord wood

and carpenter work, pursuant thereto, and so continued until November 1, 1908, when without any fault on his part, and without cause or assigning any reason therefor, and without plaintiff's consent, it withdrew from plaintiff and his said son all carpenter work, and other work of any kind, and notified him, that it would not furnish him further work, in direct violation of the terms of said contract, and did, on November 1, 1908, withdraw all further work from him, and paid him for the time from September 15, 1908, to November 1, 1908, at the rate of $2.50 per day for his services, and at the rate of $2.00 per day for two days in each week for his said son, and did furnish the cottage and cord wood as aforesaid, and that he and his said son had always been ready, willing, able and desirous to continue the work, but were stopped and hindered therein by defendant, wherefore, and for breach of the contract by defendant, plaintiff was entitled to recover from it, on the contract, for 182 working days from November 1, 1908, to June 1, 1909, on account of labor to have been performed by himself, and for 60 days, at the rate of $2:00 per day within the same period, to have been performed by his said son. Laying his damages at $500.00.

Defendant demurred to the declaration and to each count, which was overruled. Its pleas were non-assumpsit, and a special plea of non est factum, on which issues were joined, and the case was tried by a jury.

On the trial it was shown and admitted that the name, "Old Sweet Springs Hotel Co. (R.)" was signed to the alleged contract, as the initial "R" implied, by W. D. Rockefeller, general manager, employed to operate the hotel for the season, and whose time, beginning in the spring, expired November 1, 1908; and it was proven that about September 1, 1908, Rockefeller had been notified, by the president of the defendant company, that he would not be continued in service after his term expired, and to at once close the house, discharge the labor, and prepare to settle up his accounts, and end his connection with the company.

The issues tendered on the trial were: (1) That the alleged contract was a fabrication conceived of after Rockefeller's employment ended. (2) That in any event, it was void and not binding on defendant, being without *express*

authority; and, in so far as it purported to hire help for a period beyond Rockefeller's own employment, not within any "apparent authority" incident to his position. (3) That in any event, the alleged contract was nudum pactum, without consideration, and non-enforceable.

The following are relied on as errors calling for reversal: First, the admission of Rockefeller's deposition in evidence: Second, the refusal of the court to instruct a verdict for the defendant: Third, the giving of the only instruction asked for by plaintiff: Fourth, the refusal of the court to set aside the verdict and award defendant a new trial.

The first point we think is not seriously relied on. There was objection on the trial to the reading of the deposition, which was overruled; but the objection was general, and not for want of notice suggested here. The notice as certified in the bill of exceptions does not show service of the notice on defendant, but a corrected copy from the record, since certified here on our request by the clerk of the circuit court, shows acceptance of service of the notice by local counsel for the defendant company. So this point of error will be overruled.

If either of the three several issues tendered by defendant, were erroneously determined against it, it follows that the second, third and fourth errors assigned should be sustained, and the judgment below reversed. On the first, that the contract was a fabrication, the evidence is conflicting. Actual knowledge of this fact was known only to Rockefeller and McGuire, both of whom swear that the contract was made on or about its date, September 15, 1908. Rockefeller swears, moreover, that it was made pursuant to express verbal authority of C. C. Lewis, Jr., President of the Company, and upon a memorandum made on an envelope in the presence of Lewis, shortly before the paper was prepared, and that the contract was made on a duplicate copy book, which was left in the safe in the private office at the hotel when everything was turned over to the company. McGuire swears that he moved into the cottage, and that he and his son performed labor under the contract, and were paid according to its terms up to November 1, 1908, when he was discharged. Prior to the date of the paper, both McGuire and his son had been work-

ing under Rockefeller, at the same kind of work, for several months, by the day, and under no special contract in writing.

That any such special authority was given by Lewis, president, is flatly denied by him; he swears that while at the hotel about September 1, 1908, he notified Rockefeller to close the house, discharge the help and that his services would not be required after November 1, 1908; that he left Old Sweet Springs about September 1, 1908, it might have been a few days after the first, returning to his home in Charleston, and that the first he knew of the alleged contract, was through his father, sometime during the following winter. Mr. C. C. Lewis, Sr., appointed general manager, September 30, 1908, notified Rockefeller about October 10 or 12, that he would be at the hotel on October 14; that he did go and then instructed him to close up everything. Later, on November 3, he returned, to settle up, and on inquiry of Rockefeller whether he had his accounts ready so he could settle and pay labor bills, Rockefeller replied that there was no one then employed, except Burns, the gardener, Griffith, employed regularly on the farm, and a girl he had brought with him as a family servant. He did say there was one man McGuire, whom he considered it a hardship to dismiss at that time, and on Rockefeller's suggestion, Lewis went to see McGuire, telling him that if he considered it a hardship, he could have the cottage and his fire wood free until May 1, 1909, which seemed satisfactory to McGuire, and that the existence of the alleged contract was not then hinted or suggested either by Rockefeller or McGuire, and that he never heard of such a contract until in April following, when at the Springs McGuire delivered him a letter telling him of the contract, and threatening suit. He further swears that he then inquired of McGuire whether the alleged contract had not been drawn by Rockefeller and Marshall, his lawyer, a few days previous, when Marshall was there, and to which McGuire would make no answer.

There is considerable other evidence tending to throw suspicion on the contract. For example, McGuire wrote Lewis, Sr., February 16, 1909, making demand for a small bill for labor, which one of the workman had assigned him to pay a board bill, also requesting him to secure payment of a small bill for crating a cart for Mr. John Lewis, and saying he was

badly in need, having been without anything to do all winter, with a family to support. Then on April 3, 1909, he delivered to Lewis, Sr., the letter already alluded to, evidently dictated by an attorney, notifying Lewis of his alleged contract.

A bit of evidence, which might have shed much light on the question of fabrication, in the possession of defendant, was not produced. That was the duplicate order book, containing the contract with McGuire, which Rockefeller swears he left in the defendant's safe, November 1, 1908. The fact of the existence of that book and its contents was not denied, and the book was not produced. If that book came to the possession of defendant November 1, 1908, and contained the contract with McGuire, as Rockefeller swears, and swears that Lewis, Jr., had knowledge of it, it would have been strong evidence against the defendant's theory of fabrication, at least after November 1. If, on the contrary, the contract was not in the book, it would have furnished almost convincing evidence of fabrication, besides would have convicted Rockefeller of swearing falsely, entitling his whole evidence to little, if any, credence.

The apparent silence of McGuire about the contract, for so long a time, is of course a very strong circumstance against him. But if he was resting in the belief that defendant knew of his contract, through Rockefeller, and had the evidence of it in the order book, his conduct afterwards and in writing the letters are not wholly inconsistent. He swears that when he was laid off in November he understood it was for only a short time, and, according to Griffith, he said he, Lewis, Sr., had promised him the refusal if improvements should be made. If he had a binding contract, he might have been willing to be laid off for a short time, without surrendering any rights under his contract. He swears that he applied to Putney, the bookkeeper, for work, and also to Mr. Lewis himself, pursuant to the contract. Putney is not called as a witness on the subject.

On this evidence, was the jury wholly unwarranted in finding the contract genuine and not a fabrication, according to the theory of defendant? Whatever our personal views of the evidence may be, we could not justify reversal of the

judgment, on principles applicable to trials by jury, on this score.

Now as to the second issue, namely, want of *express* or *apparent* authority in Rockefeller to make the contract, voiding it. As noted, Rockefeller swore that he had the express direction of Lewis, Jr., president, to make the contract, denied by Lewis, but according to Rockefeller, fully known to him, and recorded in the duplicate order book left in the defendant's possession. There is one thing respecting Rockefeller's evidence of express authority from Lewis, which weakens it. He swears that his direction from Lewis to employ McGuire, was when the latter had another offer, and the proposal involved McGuire's moving his family from Pocahontas County to Old Sweet Springs, and in connection with proposed improvements of the property amounting to $50,000, to be carried out under Rockefeller's direction, with McGuire as foreman, &c. These circumstances accord with the circumstances of McGuire's original employment, before his departure from Pocahontas County, and in the beginning of Rockefeller's own employment, rather than those surrounding the parties in September, after all work had been ordered stopped, and Rockefeller had been notified of his own discharge, to be effective November first. He was evidently mistaken in the circumstance of the contract. But there is the contract, made or purporting to have been made September 15, 1908, recorded in the duplicate order book of the defendant, and the participating witnesses swear that it is genuine and made at that time.

But it is said the case was not tried or rested on the theory of express authority, but, as evidenced by the only instruction to the jury asked and given on behalf of plaintiff, on the theory of apparent authority of a general manager. If there was express authority, as, upon the evidence, the jury might have found, defendant could not complain of an instruction on the theory of apparent authority, of the general manager.

Against the theory of apparent authority, it is contended, first, that section 53, chapter 53, Code 1906, constitutes a statute of limitation, not only upon the general manager, but upon the board of directors of a corporation also, employing officers and agents, except at the pleasure of the board of

directors. Second, that there is no apparent or implied authority from the character of the office of general manager to employ labor or make contracts of any kind for a period beyond his own employment.

The statute, section 53, chapter 53, Code 1906, provides: "The officers and agents so appointed shall hold their places during the pleasure of the board." Note the statute says "officers and agents." In *Darrah* v. *Ice and Storage Co.*, 50 W. Va. 419, the plaintiff suing was the Secretary-Treasurer, an officer of the company, and clearly within the statute. In *Munn* v. *Trust Co.*, 66 W. Va. 204, we held that a mere book-keeper, employed to do such work as might be assigned by the officers of the bank was not *ex vi termini* an officer or agent within the meaning of this statute. If this be the law, certainly a common carpenter employed, as the contract sued on implies, to do such daily work as he might be directed, and with no authority express or implied to represent the corporation, or to come into contact with the public in its business, is not an officer or agent whom the board or its general manager might not employ for a definite period. True he might be discharged by the corporation, but not without incurrence of liability for damages sustained, as *Munn* v. *Trust Co.*, and cases cited, hold. If this were not law one board of directors, or its officers, could not contract for any kind of service beyond their own term of service, which would be greatly to the detriment of all kind of corporate business.

But is there implied or apparent authority in a general manager to contract for such non-representative service, as carpenter work, beyond his own term of service? We think the authorities cited and relied on by counsel for defendant answer, No, if for anything unusual, extraordinary, or unnecessary, or if fraud or imposition upon the employer be shown. *Laird* v. *Michigan L. Co.*, 153 Mich. 52; *Camacho* v. *Hamilton Bank-Note & Engraving Co.*, 2 App. Div. 369, 37 N. Y. Supp. 725; *Nephew* v. *Michigan C. R. Co.*, 128 Mich. 599-602; *Carney* v. *N. Y. Life Ins. Co.*, 162 N. Y. 453; *Ceeder* v. *H. M. Loud & Sons L. Co.*, 86 Mich. 541; *Smith* v. *Co-operative Dress Ass'n.*, 12 Daly, (N. Y.) 304; *Boogher* v. *Maryland L. Ins. Co.*, 8 Mo. App. 533; *Vogel* v. *St. Louis Museum &c.*, 8 Mo. App. 587; *Reupke* v. *Grain Co.*, 126 Iowa 633. But

is this rule applicable here? Here was a general agent, with admitted authority to employ and discharge all labor, make necessary improvements, and carry on generally the business of a corporation operating a hotel remotely situated from centers of population, where good mechanics are generally found. Was it any thing unusual, extraordinary, or unnecessary, that he should employ a carpenter to reside on the grounds, and work out of season in making necessary repairs, usually made at such time, and to have the property in readiness for the following season, particularly, if, as is claimed in this case, such employment was suggested or directed by the president, or other executive officer, authorized in the premises? We can not think so. The power of a general manager depends largely on the nature of the business of the corporation. 2 Thompson on Corp., section 1585. We do not think, in this case, it was anything out of the usual or ordinary that the general manager should contract for labor to make repairs for the coming season, though extending slightly beyond the term of his own employment, even without the direction of an executive officer. With such direction there could be no doubt of it we think. 2 Thompson on Corporations, section 1581.

But is the contract lacking in mutuality, and for this reason unenforceable? This point is strongly urged in a very elaborate and able brief of learned counsel. But we are of opinion, that it cannot be affirmed on authority. The contract amounted at least to a proposal by defendant to plaintiff to employ him. It was definite, certain and distinct both as to time, price and amount of service. According to the evidence plaintiff accepted this proposal, not by any formal writing, but by entering on the employment, and was paid according to the terms of the contract up to November 1, 1908. All this amounted to an acceptance of the proposal, binding him and the defendant to its entire performance, and though executory, constituted a valid contract, not void for want of the necessary element of mutuality. And if the defendant knew of the contract, and accepted service under it, and paid plaintiff pursuant thereto, as plaintiff's evidence tends to show, and as the jury may have concluded, that amounted to ratification, rendering the contract, if not in its inception, thereafter valid and binding. The acceptance by defendant could

not be said to have been indefinite, conditional or uncertain. It is only when the acceptor himself has really promised nothing in return, has not made himself liable for any thing, or when the proposal is indefinite or uncertain so that acceptance results in nothing, that the rule of the authorities cited and relied on by defendant's counsel have complete application. 9 Cyc. 325; 1 Page on Contracts, sections 304, 306, and note 4; 2 Thompson on Corp. section 1585; *Tucker* v. *Woods,* 12 Johnson 190; *Hoffman* v. *Maffioli,* 104 Wis. 630. But when the proposal is certain, definite and unconditional, though the proposal be to one to perform labor, and there is like acceptance, there is no lack of mutuality, as the authorities cited and relied on we think fully show. *Louisville & Nashville R. Co.* v. *Offutt,* (Ky.) 59 Am. St. Rep. 467. If the conduct of plaintiff after the proposal in entering on the work amounted to acceptance, as we think it did, that proposal being certain, definite and unconditional, there was complete acceptance, and he thereby became bound to its fulfillment, and there was no lack of mutuality. We must therefore overrule the point.

From all these considerations it follows, that the second, third and fourth points of error relied on must likewise be denied, and the judgment below affirmed.

*Affirmed.*