## ·CHARLESTON.

FRED B. STEWART *v.* BLACKWOOD ELECTRIC STEEL CORPORA-
TION.

(No. 5412.)

Submitted October 27, 1925. Decided November 3, 1925.

1.   CONTRACTS—EVIDENCE—TRIAL—*Court Has Duty to Construe Written Contract, if it be Susceptible of Construction; Court Should Instruct Jury as to Their Findings Under Contract; if Evidence is Conflicting on Material Point Necessary to Interpret Contract, Question of Intent of Parties is One for Jury; if Contract of Employment is ambiguous, Construction by Parties and Acts Under it May be Considered.*

It is the duty of the trial court in a suit based on a written contract to construe the contract, if it be susceptible of construction, and instruct the jury as to their finding under the contract so construed.   But if the contract, being one of employment, is ambiguous as to the time over which it shall extend and be operative, the situation of the parties, the surrounding circumstances at the time of the contract, the practical construction given to it by the parties, their acts under it, may be considered in determining the true length of time intended.   If the evidence be conflicting on a material point necessary to interpretation, the question of the intent of the parties becomes a jury question under proper instructions.   (p. 338.)

(Contracts, 13 C. J. § 517; Evidence, 22 C. J. § 1581; Trial, 38 Cyc. p. 1524.)

2.   TRIAL—*Instruction That Written Contract for Employment, Silent as to Term of Employment Beyond One Year, Except That After Year Fixed Wage Shall be Paid per Month, Constitutes Contract for Two Years, Held Error.*
Where such a contract as is mentioned in the first point, is silent as to the term of employment beyond one year, except

that after the one year a fixed wage shall be paid per month, it is error for the court to tell the jury that the writing constitutes a contract of employment for a period of two years. (p. 338.)

(Trial, 38 Cyc. p. 1523.)

3.  FRAUDS, STATUTE OF—MASTER AND SERVANT—*Contract May be Formed by Correspondence; Letter Offering Contract of Employment Held Sufficient to Satisfy Statute.*

A contract of employment may be formed by correspondence, and where the letter of proposal from the employer, afterwards accepted by the employee, shows on its face that the employment shall extend for more than a year, the letter of proposal is a sufficient memorandum in writing to relieve the contract from the bar of the statute of frauds.   (p. 339.)

(Frauds, Statute of, 27 C. J. § 308; Master and Servant, 39 C. J. § 10.)

4.  CORPORATIONS—*Whether President and General Manager of Corporation Has Power to Make Contract of Employment for More Than Year Held to Depend on By-Laws, Character of Business, and Practical Operation Thereof.*

Whether a president and general manager of a corporation has power to make a contract of employment for more than a year for the benefit of the corporation, depends upon the by-laws defining his powers and duties, the character of the business placed under his management, and his practical operation thereof with the assent of the directors.   All such facts and circumstances may be considered in arriving at the extent of his power given under the by-laws; and whether the contract is unusual or extraordinary.   (p. 339.)

(Corporations, 14a C. J. § 2280.)

5.  SAME—*On Conflicting Evidence as to Whether Corporation's Directors Have Ratified Contract of Employment by President, Question of Ratification is One for Jury.*

Where there is a sharp conflict in the evidence as to whether the directors of a corporation have ratified and confirmed a contract of employment made by its president and general manager, claimed to be ultra vires by the corporation, the question of ratification is one of fact for the jury. (p. 341.)

(Corporations, 14a C. J. § 2559.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Wood County.

Action by Fred B. Stewart against the Blackwood Electric Steel Corporation. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial.*

*F. C. Fisher,* and *Marshall & Forrer,* for plaintiff in error.
*Wm. Beard,* for defendant in error.

LIVELY, PRESIDENT:

Claiming a contract of employment as superintendent of defendant's pattern shop, carpenter shop and inspection department in its steel plant, plaintiff obtained a verdict of $4,172.50 for breach thereof in an action of assumpsit. On his motion $735.00 was remitted and judgment was entered for $3,437.50, and defendant prosecutes this writ of error to that judgment.

Defendant was establishing and organizing its plant for the purpose of manufacturing high grade electric furnace steel castings near the City of Parkersburg in the early part of 1923, and plaintiff was engaged in a lucrative employment in Fort Wayne, Ind. Through its president and acting general manager, Alexander Blackwood, negotiations by mail were opened with plaintiff for the purpose of securing his services as an employee, which negotiations resulted in the alleged contract the breach of which is the·basis of this action. Plaintiff entered the service of defendant about July 1, 1923, and was discharged about April 21, 1924. His claim is that his contract extended for two years and that he was to have been paid wages of $250. per month for the first three months, $275.00 per month for the next three months, $300.00 per month for the next six months; and for the remaining 12 months, the sum of $350.00 per month; and that without good cause and for no fault on his part he was summarily discharged. The declaration contained the common counts, and a special count setting out the contract and its breach. A bill of particulars stating an account between the parties under the alleged contract was asked for and filed. Defendant plead the general issue.

The issues raised were whether plaintiff had established a written contract of employment for a two-year service and his wages thereunder, so as to remove the bar of the statute of frauds; and whether Blackwood, defendant's president, who made the alleged contract on defendant's behalf, had authority to bind it by a contract for a term of years. A motion to set aside the verdict as contrary to the law and evidence, because of evidence admitted and evidence refused, instructions given and refused, and excessiveness of the verdict, was made and overruled.

The points of error are: (1) that the evidence fails to establish a contract for a term of years, so as to relieve it from the statute of frauds; (2) that the evidence fails to show authority in Blackwood, either as president or general manager to make a contract of employment for a term of years; and (3) excessiveness of the verdict.

Did the evidence establish a contract for two years?

Plaintiff claimed that such contract was clearly established by correspondence between himself and Alexander Blackwood acting as president and general manager of defendant company. A part of the correspondence was put in evidence. The first letter was to Stewart from defendant Company, dated March 5, 1923, purporting to answer a letter from Stewart to Blackwood, dated March 1st (which was not produced, but its absence accounted for to the satisfaction of the trial court). In the letter of March 5th Blackwood says he had in mind to hold stock (of the Company), say 20 shares, for about two years so that Stewart could have an opportunity of purchasing same at his leisure; and offered to employ Stewart at $175.00 per month until the plant was in operation and producing when there would be an increase to $200.00 per month, the service to begin about April 1. On March 12th, Stewart answered and declined the offer. On March 14th, Blackwood replied asking what salary would Stewart accept to take charge of pattern shop, carpenter shop and inspection departments, the service to begin April 15th or May 1st. On March 17th, Stewart answered, proposing to enter the employment at $350.00 a month to start with and more as the business in-

creased, and to stay in the service at that wage indefinitely. And as to the purchase of stock, he would pay for part of it when he came, ''and would like at least a two year contract.'' On March 28th, Blackwood acknowledged Stewart's letter of March 17th, saying he would like to meet the offer in full but was unable to do so; and made a counter offer as follows: the wage to be $200.00 to continue for three months after beginning of the operation; then to be $250.00 for three months further, and then $275.00 per month, and after operation for one year the wage to be $300.00 per month. The letter said, ''We are executing a contract covering a period of years, just as you want it, and will also reserve sufficient stock to make it interesting and also to make you a prominent stockholder.'' Blackwood (who had been relieved as president and general manager) produced the correspondence and was examined as plaintiff's witness. He was then permitted to say that he had received a reply to his letter of March 26th (the reply being dated March 29th), but was not permitted to say what the contents were because the reply of March 29th was not produced. He said he had turned it over to the Company on March 5, 1924. No notice had been served on defendant to produce that reply letter; and the court refused to permit the evidence of its contents to go to the jury, because it was not a lost document. Counsel for defendant upon being called on for the reply letter of March 29th, stated that they did not have it, had not looked for it, not having been noticed to bring it to the trial, and had spent three days in looking for a letter of April 5th which they had been called on to produce at the trial, and had been unable to find it. The next letter offered was from Blackwood, as president and general manager, to Stewart, dated April 2nd; it was rejected because it showed on its face it was in reply to the letter of March 29th, which had not been produced and no sufficient showing made to justify its non-production. Plaintiff's counsel then offered the letter of April 2nd as being independent of the former letters and as a proposal of a contract of service which proposal was, he alleged, afterwards accepted by Stewart on April 5th, and confirmed on April 10th by defendant Company.

That letter is important, for it is upon the proposal therein and its acceptance that plaintiff bases his theory of a contract of employment for two years. The letter says:

> "I beg to acknowledge your favor of March 29th and was indeed glad to hear from you.
>
> I have gone very carefully over your proposition and offer you the position as outlined by us on the following terms: $250.00 per month to start for the first three months that the plant is in operation, $275.00 per month after the plant has been in operation three months, this salary to remain in force for six months; $300.00 per month after the plant has been in operation six months and to remain in force for the balance of the year, $350.00 per month after the plant has been in operation one year.
>
> We will also reserve for you 20 shares of Capital Stock of this Company at a pro-rated value of $100.00 per share. This stock would be taken up and paid by you over a period of two years.
>
> Kindly write me your acceptance of this proposition and also arrange to be ready to start with us May 1st, 1923."

Stewart was then placed on the stand and asked if he had accepted the offer, and he said he had done so by his letter of April 5th which he did not have and for the production of which he had served notice on defendant. The latter having searched for the letter of April 5th, replied that it could not be found, and Stewart was permitted to state the substance, in response to the following question: "Now, what was the purport of contents of your letter of April 5th?". He replied that, "It was an acceptance of the contract made by Mr. Blackwood through a letter and also as to looking up an apartment for me in which I and my family were to live". The last letter between the parties, dated April 10th, to Stewart from the Company, written by E. M. Lewis, Assistant to President, acknowledged the receipt of Stewart's letter of April 5, and says that he is requested by Mr. Blackwood to say that "he is very glad indeed to know that you accept our offer, and will be in Parkersburg on May 1st."

An inspection of the offer of April 2nd discloses (1) that wage is fixed for periods of three, three and six months after the plant is in operation, and after these three periods then the sum of $350.00 per month is fixed ''after the plant has been in operation one year''; (2) that 20 shares of stock at a par value of $100.00 per share were reserved, which would be taken up and paid for by Stewart *over a period of two years.* We fail to find any proposal for an employment for any definite time after twelve months from the time operation of the plant began.   The proposal was to pay plaintiff $350.00 per month ''after the plant has been in operation one year''.  How long would the service continue?  The payment for stock in a period running over two years, does not impel the conclusion that the service should continue that long, although it is persuasive if taken in connection with Stewart's letter of March 17th wherein he says he ''would also like at least a two year contract'', at a wage of $350.00 per month from the beginning of his offered services.  Nor would a period of payment for stock running over five years justify the assumption of a contract of service for that period of time (five years). The situation of the parties, the circumstances under which the employment began, and the former correspondence (if properly connected, all of it introduced or the contents shown after the legal foundation accounting for non-production) might be considered as bearing upon the term of service, if there be ambiguity in the proposal as to the term of the employment. But that question does not fairly arise here, and we express no opinion on it.  For by instruction No. 1 for plaintiff, the court told the jury ''the correspondence offered in evidence constitutes a contract of employment for a term of two years''at wages of $250.00 per month for the first three months, $275.00 per month for the three months next following, $300.00 per month for the remaining six months of the first year's operation, *and $350.00 per month for the next year of the said term of two years;* that if they found that plaintiff entered the service and was discharged before the expiration of the two-year term, without fault on his part and against his will, and he was damaged thereby, then he was en-

titled to recover for the wage stated, if they further believed from the evidence he was necessarily unemployed by reason of such discharge.

The trial court properly refused to admit in evidence the proposal of April 2nd, as one of a series of letters in the formation of the contract, for if correspondence is relied upon as forming a contract the entire correspondence relating to it must be produced; or if any of the letters are lost or beyond control of the party asserting the contract, he must show this fact and then prove their contents. *Coal Company* v. *Ritchter,* 31 W. Va. 858, 863. All that was before the court then, was this letter of April 2nd as an independent proposal and the acceptance thereof (the substance of which was given by Stewart, the letter of acceptance being beyond his control) of April 5th, and acknowledgment of the acceptance, of April 10th.

It is the duty of a trial court to construe a written contract sued on, if it be susceptible of construction, and to tell the jury what their finding should be under the contract as construed. And where the written contract is ambiguous and uncertain parol evidence is admissible to show the situation of the parties, the surrounding circumstances at the time of the writing, and the practical construction given by the parties. Even then, if the parol evidence be not in conflict, the duty remains with the court to construe the writing; otherwise it becomes a jury question under proper instructions. *Watson* v. *Buckhannon River Coal Company,* 95 W. Va. 164, 120 S. E. 390. But the court has told the jury that the *correspondence* constitutes a contract of employment for a term of two years, when the proposal and acceptance are both silent as to the term of employment, except for a doubtful inference to that effect from the fact that stock reserved for plaintiff could be paid for by him over a period of two years. How paid? Out of his wages during that time? The writing does not say so. The court has erroneously construed the proposal and acceptance in the light of the legitimate evidence. Under this instruction the jury could not well return a different verdict from the

one it found. The error is prejudicial and calls for reversal. The time in which the contract was to run is ambiguous, was a question of fact not determinable from the writing, and should have been submitted for jury determination under proper instructions. Plaintiff insists that the letter of April 2nd and its acceptance of April 5th, constitutes a written contract. That cannot be questioned. To establish the time which the contract was to run he relies on Stewart's letter of March 17th wherein he expressed a desire for a two-year contract on the basis of $350.00 per month from the beginning. That offer was not accepted; and besides the proposal of April 2nd was offered and admitted only as an independent proposal, and as constituting in itself the terms of the contract accepted, as heretofore set out.

Defendant also asserts that the statute of frauds prevents recovery for any sum beyond a term of one year, because there was no note or memorandum in writing of a contract of that character signed by defendant. It is well settled that a written contract may be formed by correspondence. *Shrewsbury* v. *Tufts,* 41 W. Va. 212. That there was a contract in writing cannot be questioned, provided Blackwood had authority to bind defendant in employment of its servants. The proposal of April 2nd clearly contemplates that plaintiff was to enter the employment for more than a year, for he was to receive $350.00 per month after the plant was in operation for twelve months. His contract ran more than a year, for he was to receive $350.00 per month after the first year. That proposal and its acceptance forms a written contract and is a memorandum in writing signed by defendant. *Day* v. *Kramer,* 87 W. Va. 777. The statute of frauds cannot be successfully invoked; and hence defendant's instruction No. 5 which told the jury that plaintiff could not recover unless they believed that there was a memorandum in writing for two years employment, signed by defendant, and that the letters were not such memorandum, was properly refused.

The next assignment of error is that the evidence fails to show authority in Blackwood, the president and general manager, to make the contract for a term of years. It is urged

that even if a contract has been proven extending for more than a year, the act of Blackwood in making that contract is ultra vires and does not bind defendant. It is conceded that Blackwood was acting as general manager at the time the contract was made. Sec. 5, of Art. 4 of the by-laws of the corporation give to the general manager power "to look after and superintend the manufacturing operations of the Company, and subject to such restrictions and limitations as the Board (of directors) may impose, to employ all assistance and labor necessary therefor, contract for compensation, and to discharge any person so employed". It is urged that as a general rule a general manager, or even a board of directors whose term as such continues for only one year under our statute, Chap. 53, Sec. 49, Code, cannot make a contract of employment to extend beyond their term of office, and such contract is voidable at the option of the corporation. And it may well be doubted if a general manager, by virtue of his inherent power as such, may make contracts of employment beyond his own term. Thompson on Corp. Vol. 2, Sec. 1583. However, it is stated by Thompson in the section cited, that the application of general rules, either conceding or denying the powers of a general manager, must be taken with reference to the nature of the business, and the particular act that he did, or contract that he executed. The operations of the Corporation were in their inception and it was important that employees of expert knowledge and experience should be secured in the organization. It is not shown that any restrictions as to the time or term of employment of such persons, were imposed by the board of directors in accordance with the by-law. Under these circumstances the employment was not extraordinary. *McGuire* v. *Springs,* 73 W. Va. 321. In view of the circumstances and the by-law, we do not think a conclusion of law to the effect that the contract of employment was ultra vires on the part of Blackwood can be safely deduced. Therefore, the court properly refused defendant's instruction No. 4 which would have told the jury that, under the by-laws, *all contracts* of employment made by the president were ultra vires, al-

though the president and general manager were one.   This instruction would have taken the whole of the contract from the jury's consideration. Plaintiff says that under Sec. 2, of Art. 4 of the by-laws, Blackwood had authority to sign the contract. We do not find any mention of Sec. 2, Art. 4, in the evidence, and its bearing upon the authority of the president, as such, to make and sign the contract cannot be considered by this court.   Plaintiff further relies upon ratification of the contract by defendant.   He says that in obedience to a request of record made by the Board on March 5, 1924, Blackwood turned over to the Board on that day his letter of March 29, 1923, accepting the terms of the contract.   Blackwood says he did so.   After that date and until his discharge on the 21st of April following he continued in the employment and was paid according to the terms of his employment.   Defendant, by two other witnesses, while admitting the request of record made to Blackwood for all contracts of employees made by him, denies that Stewart's contract was turned over to it, and says that it had no knowledge of such contract until the suit was instituted.   The question of ratification should have been presented to the jury for its determination. No instructions were given upon this question.   The court eliminated the necessity therefor by giving plaintiff's instruction No. 1.

The last assignment relates to the excessiveness of the verdict.   The jury found in accordance with plaintiff's instruction No. 1, except it did not take into account the wages which plaintiff had received after he was discharged, namely $35.00 per week.   The verdict was therefore excessive, but its excessiveness was reduced by plaintiff's remitter, accepted by the court, calculated at $35.00 per week for the remainder of the term of employment, amounting to $735.00.   As the verdict must be set aside this assignment of error is unimportant.

It is insisted that the court erred in admitting in evidence the correspondence between the parties, including the letter of April 2nd.   The letters prior to that date were introduced to establish the contract.   That there would be a break

in the correspondence by the failure to produce an important letter, or to account for its non-production in order to prove its contents, could not be anticipated by the court. Plaintiff upon failure to bring in all of the letters, then offered and relied upon the letter of April 2nd as an independent offer afterwards accepted. The court then admitted it on that basis, and we find no motion or effort made to exclude the former letters. They were admisisble when offered. The entire correspondence could not be introduced in a batch. To save this point of error defendant should have obtained a ruling by proper motion.

Our conclusion is to reverse the judgment, set aside the verdict and award a new trial.

*Judgment reversed; verdict set aside; new trial.*